[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 30, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15439

_____

D. C. Docket No. 05-00074-CV-WLS-1

FRANCES ALBRITTON,
ANA ALCANTAR, et al.,

Plaintiffs-Appellants,

versus

CAGLE'S, INC.,

Defendant-Appellee.

_____

No. 06-15612

_____

D. C. Docket No. 05-00075-CV-WLS-1

WINFRED ABDULLAH,
CHARLIE ADAMS, et al.,

Plaintiffs-Appellants,

versus

EQUITY GROUP-GEORGIA DIVISION, LLC,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

**(November 30, 2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

CARNES, Circuit Judge:

These appeals arise from some of the "donning and doffing" litigation, a series of cases brought around the country by employees alleging that their employers owe them compensation under the Fair Labor Standards Act for time spent putting on and taking off protective or sanitary clothing that is necessary for their work.  See, e.g., Gorman v. Consol. Edison Corp., 488 F.3d 586 (2d Cir. 2007); Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004); Tum v. Barber Foods, Inc., 360 F.3d 274 (1st Cir. 2004), aff'd in part, rev'd in part sub nom IBP, Inc. v. Alvarez, 546 U.S. 21, 126 S. Ct. 514 (2005); De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003).

The lawsuits underlying these appeals grew out of an earlier one that led to our decision in Anderson v. Cagle's, Inc., 488 F.3d 945 (11th Cir. 2007).  They

include the same defendants—two companies operating chicken processing plants in the state of Georgia—and many of the same potential plaintiffs as the Anderson case did. The issues stem from the statutory requirement that no employee may be a "party plaintiff" in an FLSA collective action until his written consent is filed in the court where the action is pending. See 29 U.S.C. § 216(b).

## I.

The complaint in the Anderson lawsuit was filed in September 2000 by three named present or former employees of Cagle's, Inc., and nine named present or former employees of Equity Group-Georgia Division, LLC (then called Cagle Foods JV, LLC). See Anderson, 488 F.3d at 949 & n.1. They alleged on behalf of themselves and other similarly situated individuals that the two companies had violated the FLSA by not compensating their employees for the time required to don and doff the protective clothing they were required to wear while working on the chicken processing line. Id. at 949–50.

The district court followed the procedure for managing FLSA collective actions that we had described in Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208 (11th Cir. 2001), by conditionally certifying the collective action and

allowing counsel to notify potential opt-in plaintiffs of their right to participate in the proceedings.[1] Anderson, 488 F.3d at 950.

To carry out the notification process, the plaintiffs' lawyers sent notices to "[a]ll current and former hourly wage employees" of Cagle's, Inc. and Equity Group. Issued under the Anderson v. Cagle's, Inc. case style, the notice summarized the basic allegations in the complaint, described the people who were eligible to join the lawsuit, and told recipients how they could join if they wished to do so. For example, one section, entitled "YOUR RIGHT TO JOIN THIS SUIT AS A PARTY PLAINTIFF," said this:

> If you believe that either Cagle's, Inc., and/or [Equity Group] has failed to properly compensate you for your time spent changing into and out of protective clothing/equipment before and after your shift, and/or for your lunch break, you have the right to make this claim against Cagle's, Inc., or [Equity Group] as a plaintiff in this lawsuit.

The notice referred interested readers to an attached "Consent to Become Party Plaintiff form," but told them: "It is entirely your own decision whether to join this lawsuit. You are not required to take any action unless you so desire."

---

[1] The collective action in Hipp actually was brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. That Act incorporates by reference the FLSA's collective action provision, see 29 U.S.C. § 626(b), so the Hipp procedure applies in both contexts.

The consent form itself also bore the style of the <u>Anderson v. Cagle's, Inc.</u> case. By signing the consent form, an employee agreed to the following three propositions stated in the form:

1. I hereby agree to pursue my claims against CAGLE's, INC., and/or [Equity Group] and any related companies, arising out of federal and/or state wage-and-hour laws in the above-captioned lawsuit.

2. I understand and acknowledge that this lawsuit is being brought under the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, <u>et seq.</u>, to secure unpaid minimum wages, unpaid overtime wages, liquidated damages, attorneys' fees, costs, and other relief arising out of my employment with CAGLE's, INC., and/or [Equity Group] and any related companies. I hereby consent, agree, and opt-in to become a party plaintiff and to be bound by any settlement of this action or adjudication by the court.

3. I hereby designate GORDON, SILBERMAN, WIGGINS AND CHILDS, P.C., the LAW OFFICE OF GRANT MORRIS, and GARDNER, WILLIS, SWEAT & GOLDSMITH to represent me in the proposed suit.

The forms concluded by asking employees to indicate the plant in which they had worked, the dates of their employment, the positions they had held, and their union status. Although some 2,200 current and former employees of the two <u>Anderson</u> defendants signed and returned these forms, several hundred of them were thereafter dismissed from the lawsuit based on reasons such as the statute of

5

limitations or their failure to comply with discovery requests. Anderson, 488 F.3d at 950. Those dismissals left just over 1,800 opt-in plaintiffs remaining. See id.

After discovery, the district court granted the motions of the two defendants, severing the claims against Cagle's, Inc. from those asserted against Equity Group, and decertifying the collective action. Id. The court did that because the differences in work locations, work assignments, compensation structures, and protective clothing meant that the plaintiffs were not similarly situated enough to maintain a collective action under the FLSA. Id. at 952.

After the court de-certified the class, both Cagle's, Inc. and Equity Group filed motions for summary judgment. Id. at 950. Before the district court could rule on these motions, the remaining named plaintiffs in the lawsuit against Cagle's, Inc. settled their claims, which led the district court to deny Cagle's, Inc.'s motion for summary judgment as moot. Id. The court then granted Equity Group's motion for summary judgment and entered a judgment against the remaining named plaintiffs in the Equity Group lawsuit on all of their claims. Id. On appeal, we affirmed the district court's orders decertifying the collective action, granting summary judgment, and entering judgment in favor of Equity Group. Id. at 950–54, 960.

In June 2005, which was about two months after the district court issued its decertification order in Anderson, the lawyers who had represented the Anderson plaintiffs filed two substantially identical complaints initiating the present two lawsuits. The complaint in Abdullah v. Equity Group, No.06-15612, listed several hundred plaintiffs in its caption, all of whom, the complaint said, were "former opt-in plaintiffs" from Anderson who are "current or former employees of [Equity Group] . . . at [its] Camilla processing facility." The complaint in Albritton v. Cagle's, Inc., No. 96-15439, listed hundreds of former Anderson opt-in plaintiffs, all of whom were "current or former employees of [Cagle's] . . . at [its] Macon, Perry, Pine Mountain Valley, [or] Atlanta processing facilities." Each of the named plaintiffs in these two lawsuits had signed and returned consent forms in the Anderson lawsuit during 2002, but the attorneys purporting to represent them concede that they did not obtain new consent forms from any of the plaintiffs before filing these lawsuits in 2005.

The two complaints before us list far more individuals as named plaintiffs than the complaint in Anderson did. In Anderson there were only 12 named plaintiffs but there were approximately 2,200 opt-in plaintiffs of whom 388 were dismissed for one reason or another, leaving about 1,812 at the time the court de-certified the class. Anderson, 488 F.3d at 950. By contrast in the present two

7

lawsuits there are a total of approximately 1,016 named plaintiffs (by the district court's count) and no opt-in plaintiffs. And, of course, what was originally a single lawsuit against both defendants has been refiled as two separate lawsuits, one against each. Considered together, the two lawsuits do allege the same facts and make the same claims that the Anderson lawsuit did.

Like the Anderson complaint, the complaints in these two lawsuits are attempts to bring an FLSA collective action. Each complaint is labeled "COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF FAIR LABOR STANDARDS ACT OF 1938." Although both complaints do state in one place that the plaintiffs are "join[ing] their individual claims pursuant to Rule 20(a) of the Federal Rules of Civil Procedure," their principal thrust is the assertion by the named plaintiffs of claims "on behalf of themselves and all others similarly situated." The complaints expressly invoke the collective action provision found in § 16(b) of the FLSA, codified at 29 U.S.C. § 216(b), stating in their introductions, for example, that "[t]his suit is brought on behalf of the Plaintiffs and all others similarly situated pursuant to § 216(b) of the FLSA."

In each case the defendant employer moved to dismiss the complaint, contending primarily that the would-be plaintiffs had not complied with the filed-consent requirement of FLSA § 216(b). The plaintiffs' counsel responded that

8

individual, named plaintiffs in a collective action are not required to file consent forms, and that even if they were, the forms that had been filed in the <u>Anderson</u> lawsuit should suffice to authorize the current lawsuits.

The district court disagreed. Focusing on the specifics of the notices and blank consent forms that were used by plaintiffs in the <u>Anderson</u> case, the court pointed out that the terms "clearly and specifically invited [the potential opt-in plaintiffs] to join as party plaintiffs in <u>Anderson</u>, and not in this or any other new or additional suit." For that reason, the court concluded that the consent conveyed by the <u>Anderson</u> form was limited to that case and "not freely transferrable to this or any other case." On that basis, the court dismissed both lawsuits for failure to comply with the § 216(b) consent requirement, leading to these consolidated appeals by the plaintiffs in each case.

## II.

The plaintiffs' position that these lawsuits comply with § 216(b) is ultimately dependent on the proposition that the written consents of the plaintiffs in the <u>Anderson</u> case authorized their attorneys to file not only that lawsuit, but also the two complaints in these later two lawsuits. The carryover consent premise is essential to the contention that these two lawsuits should be allowed to proceed as collective actions, because § 216(b) plainly states that such an action

9

may not proceed as to any person until a formal written consent from that person is filed in court. Plaintiffs do not dispute that, nor do they contend that any written consent was filed as to any of the plaintiffs after these two lawsuits were filed.

The carryover consent premise is also essential to the plaintiffs' argument that, wholly apart from § 216(b), these two lawsuits may proceed as joint actions, which are generally permitted under Federal Rule of Civil Procedure 20. An attorney may not file lawsuits without authorization of the plaintiffs on whose behalf the lawsuit is purportedly filed.

The attorneys who wish to represent the plaintiffs do not contend that they had any affirmative authorization from their purported clients to file these two lawsuits, other than the written consents they had obtained and filed in the earlier Anderson lawsuit. At oral argument they conceded that those earlier consents were the only affirmative authorization they had to proceed. They made a similar concession in the district court. 06-15612, R1:22:5; 06-15439, R1:15:4 ("Plaintiffs' counsel admits that he had not obtained the specific consent or permission of the Anderson opt-in Plaintiffs to file this action.").

The attorneys have argued to us that it was enough that they sent letters to the Anderson plaintiffs giving them an opportunity to affirmatively opt out of these two lawsuits by writing and requesting not to be included. The problem with

10

that argument, of course, is that § 216(b) requires that would-be plaintiffs affirmatively opt in, and that they do so in writing, and that the writing be filed in court before they can be included in the lawsuit. The statute does not permit them to be included simply because they fail to act when given the opportunity. Plaintiffs' counsel argues that it is enough that the plaintiffs were given "an opportunity to decline participation in the new actions." Accepting this argument would require us to convert a statutory opt in requirement into an opt out one.

We are not empowered to rewrite statutes. Artuz v. Bennett, 531 U.S. 4, 10, 121 S. Ct. 361, 365 (2000) ("Whatever the merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them."); Wright v. Sec'y for the Dep't of Corrs., 278 F.3d 1245, 1255 (11th Cir. 2002) ("Our function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them."); CBS Broad., Inc. v. Echostar Commc'ns Corp., 265 F.3d 1193, 1213 (11th Cir. 2001) ("'It is not the function of the courts to amend statutes under the guise of statutory construction.'") (quoting Fedorenko v. United States, 449 U.S. 490, 514 n.35, 101 S. Ct. 737, 751 (1981)); Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to

11

rewrite it."). Under the statute, as written, the plaintiffs did nothing relevant after opting into the <u>Anderson</u> lawsuit three years before the present two lawsuits were filed.

Which is why, as we said before, this appeal turns on whether the consents that the plaintiffs filed in the <u>Anderson</u> lawsuit carry over to these two later lawsuits. The district court concluded that they did not, explaining:

> Upon review of the notices and blank consent forms sent by counsel to Plaintiffs among others, the Court finds that the terms contained therein clearly and specifically invited said persons to join as party plaintiffs in <u>Anderson</u>, and not in this or any other new or additional suit which might be brought or filed. It is further found that neither the notices nor the blank consent forms suggested or otherwise inferred that counsel's representation of said persons, should they choose to join <u>Anderson</u>, existed beyond the limited confines of that lawsuit. Accordingly, it is found that upon the filing of these consent forms, each Plaintiff manifested his/her intent to join <u>Anderson</u>, and no other case, according to the terms of representation contained therein. It is therefore found that the consent forms at issue are limited to counsel's representation of Plaintiffs in <u>Anderson</u> and are not freely transferrable to this or any other case.

06-15612, R1:22:5; 06-15439, R1:15:4. We can find no fault with that reasoning. It is not just that the notices and consents were captioned with the <u>Anderson</u> lawsuit style, but also that both specifically referred to that particular lawsuit and only that lawsuit. There was no attempt to request or give a general consent for litigation of the claims in whatever case might be filed. Instead, the consent was

12

limited to "agree[ing] to pursue my claims . . . in the above-captioned lawsuit." It did not purport to authorize a different lawsuit that would be filed three years later. A lot can change in three years, including the willingness of an employee or former employee to bring or join a lawsuit.

The fact that the plaintiffs' attorneys, after the <u>Anderson</u> lawsuit was dismissed, did send notices to their former clients in that case informing them that new lawsuits were being filed and that they would be presumed to consent to being a party to the new litigation unless they notified counsel to the contrary is telling. It tells us that the attorneys recognized, as we do, that the consents that had been filed in the <u>Anderson</u> case were not enough to satisfy the § 216(b) requirement as it applies to the two new lawsuits. The attorneys were right about that. What they were wrong about is their belief that the statutory requirement that would-be plaintiffs affirmatively opt into a lawsuit by expressing their consent in a writing filed with the court could be satisfied by the failure to opt out—by silence. Failing to opt out is not the same as opting in. Inaction is not the same as action.

Our decision in <u>Prickett v. DeKalb County</u>, 349 F.3d 1294 (11th Cir. 2003), which the plaintiffs rely on, does provide guidance but not in the direction they would have us go. The opt-in plaintiffs in that case had signed consent forms conveying their "consent to have the named Plaintiffs in this case represent [their]

13

interests in adjudicating [their] claims for overtime compensation and any other benefits . . . under the FLSA." Id. at 1297. The question on appeal was whether the opt-in plaintiffs had joined only the claims that were specified in the complaint at the time they signed the forms, or instead whether their consent covered an additional claim that was added to the complaint by a later amendment. Id. We held that the consents did extend to the claim that was added thereafter, reasoning that "[t]he consent given was for the named plaintiffs to represent the interests of the employee in adjudicating all claims that employee had under the FLSA." Id.

That language from the Prickett opinion, plaintiffs insist, requires us to give the loosest possible construction to § 216(b) consent forms, but that's not what Prickett teaches. Instead, the lesson from Prickett is that we must interpret consent forms according to the plain meaning of their language. See id. at 1297–98 ("Added claims no less than initial claims are, in the language of the consent form, 'my claims for overtime compensation and any other benefits . . . under the FLSA.'") (emphasis added). The consent forms in Prickett used broad language, and we interpreted them accordingly.

Here, by contrast, as we have explained, the consent forms used narrow language in describing the litigation that they authorized. The language of the forms limited the consent to joining the Anderson lawsuit. We interpret the

14

consent forms here, as we did those in <u>Prickett</u>, according to their plain terms.  We will not rewrite those forms to broaden their scope, just as we did not rewrite the forms in <u>Prickett</u> to narrow their scope.

The plain language of the statutory provision supports this approach.   It instructs us that, "No employee shall be a party plaintiff to any <u>such action</u> [under the Fair Labor Standards Act] unless he gives his consent in writing to become such a party and such consent is filed in the court in which <u>such action</u> is brought."  29 U.S.C. § 216(b) (emphasis added).  When the attorneys filed these two new lawsuits, they commenced new actions—distinct from the original <u>Anderson</u> action to which the plaintiffs had consented to opt into and be bound by.  Having initiated new actions, § 216(b) required the attorneys to file new consents with the court.

For all of these reasons, we agree with the district court that the consents the plaintiffs had filed to join the <u>Anderson</u> litigation in 2002 were limited to that litigation, and they do not carry over to the two present lawsuits which were filed in 2005.  The earlier consents do not fulfill the consent requirement for these later lawsuits, viewing them as collective actions under § 216(b), nor can those earlier consents authorize the attorneys to file these later lawsuits as a joint action under Fed. R. Civ. P. 20.

## III.

The judgment of the district court in these two cases is **AFFIRMED**.