[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-11179
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 15, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-02689-CV-TCB
BKCY No. 04-06420-BKC-JEM

In Re:  TRACY JOSEPH HEDRICK,
         THERESA ANN HEDRICK,

                                                          Debtors.

_____

NEIL C. GORDON, Trustee for the Estate of Tracy
Joseph Hedrick and Theresa Ann Hedrick,

                                                          Plaintiff-Appellant,

                              versus

NOVASTAR MORTGAGE, INC.,

                                                          Defendant-Appellee.

_____

No. 07-11187
_____

D. C. Docket No. 05-03123-CV-TCB-1
BKCY No. 03-68468-BKC-MGD

In Re: SOM R. SHARMA,

                                                               Debtor.

_____

NEIL C. GORDON,
Trustee for the Estate of
Santosh K. Sharma,

                                                      Plaintiff-Appellant,

                                versus

ABN AMRO MORTGAGE GROUP, INC.,

                                                      Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(April 15, 2008)**

Before CARNES and BARKETT, Circuit Judges, and COHN,[*] District Judge.

CARNES, Circuit Judge:

        In this consolidated appeal, Neil Gordon, the Chapter 7 Trustee of the

bankruptcy estates of Tracy and Theresa Hedrick and Santosh and Som Sharma,

appeals the bankruptcy courts' grants of summary judgment to NovaStar

_____

        [*] Honorable James I. Cohn, United States District Judge for the Southern District of
Florida, sitting by designation.

2

Mortgage, Inc. and ABN Amro Mortgage Group, Inc., respectively. The trustee brought the adversary proceedings that gave rise to this appeal to avoid the transfer of security deeds[1] in the debtors' properties under 11 U.S.C. § 547(b) (2000) (amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-9, 119 Stat. 23 (2005)).[2] That subsection of the Bankruptcy Code permits trustees to avoid certain preferential transfers of interests in a debtor's property that occur within ninety days before the filing for bankruptcy petition. The effect of doing so is to convert a creditor's claim secured by property of the debtor to an unsecured one against the estate.

The bankruptcy courts granted summary judgment to the defendant companies after concluding that under Georgia's law of equitable subrogation the transfers of the security deeds were "made" for § 547(b)(4) purposes on the date the loans closed instead of on the later date when the security deeds were

---

[1] The record and parties' briefs at various points refer to the interests acquired by the defendants and to the earlier interests that the defendants paid off as both "mortgages" and "security deeds." Under Georgia law, the two are not the same, see Cole v. Cates, 140 S.E.2d 36, 39 (Ga. Ct. App. 1964) ("[A] deed conveys title; a mortgage is only a lien." (quoting Loftis v. Alexander, 77 S.E. 169, 170 (Ga. 1911)), but the difference between them is not relevant to this case. For convenience we will refer to the interests transferred to the defendants as "security deeds" or "deeds to secure debt" (which are synonymous), which is what the bankruptcy court orders call them.

[2] When Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, it modified some of the provisions of the Bankruptcy Code relevant to this case, but all of the events in question here occurred before BAPCPA. Unless otherwise noted, all citations to the Bankruptcy Code refer to it as it was before those amendments.

recorded. That meant in the Hedricks' case that the transfer to NovaStar occurred before the § 547(b) preference avoidance period began and, as a result, the trustee could not avoid the transfer of the security deed. It meant in the Sharmas' case that the transfer qualified for the § 547(c)(1) contemporaneous exchange exception and, as a result, the trustee could not avoid the security deed.

The trustee's appeals of the bankruptcy court judgment in each case were heard by the same district court judge in a joint hearing. The court issued identical orders stating that it found the bankruptcy courts' orders to be well-reasoned, and it affirmed their judgments. This is the trustee's appeal of the bankruptcy courts' grants of summary judgment to the defendant in each of the cases, which we have consolidated.

The undisputed, material facts of both cases are similar. The debtors refinanced debts secured by property interests in their homes, paying off the earlier creditors with loans from the new creditors. The new loans were secured by first priority security deeds on the homes. The cancellations of the earlier deeds to secure debt were not recorded until after the new security deeds had been recorded, and that recording of the new security deeds took place within the ninety-day period preceding the filing of the Chapter 7 petitions. The trustee for the bankruptcy estates initiated adversary proceedings to avoid the new security

4

deeds under § 547(b), which provides for avoiding some preferential transfers that occur in the ninety-day period preceding the filing of a bankruptcy petition.

The significant difference between the two sets of debtors is that the creditors who originally held the security deeds on the Hedricks' home were paid off more than ninety days before the Hedricks filed their joint bankruptcy petition, while the creditors who originally held the security deeds on the Sharmas' home were paid off fewer than ninety days before the Sharmas filed their joint bankruptcy petition. The details and our analysis follow, beginning with the Hedricks' case.

## I.

Astoria Federal Savings and Countrywide Home Loans, Inc. each held a security deed on the Hedricks' home. On December 4, 2003, the Hedricks refinanced the debts secured by those deeds, paying off Astoria and Countrywide with $148,000 borrowed from NovaStar. The Hedricks' loan from NovaStar was secured by a first priority security deed on their home.

The federally mandated three business day rescission period on the refinancing loan expired on December 9, 2003. On December 10 NovaStar delivered checks to Astoria and Countrywide, paying off the Hedricks' debts to them in full. That same day NovaStar sent its new security deed to the county

clerk to be recorded, but the document was not actually recorded until January 7, 2004. The cancellations of the old security deeds to Astoria and Countrywide were recorded on January 22, 2004.

On April 5, 2004, the Hedricks filed a joint petition for Chapter 7 bankruptcy. Thereafter the trustee asked the bankruptcy court to avoid NovaStar's security deed on the Hedricks' property under § 547(b)(4)(A). In order to rule on that request the court had to determine when the transfer of the security deed was "made."

Section 547(e)(2)(A), the relation-back provision, states that a transfer is "made" at the time of the exchange if the interest received is perfected within ten days. The bankruptcy court applied Georgia's doctrine of equitable subrogation to find that the transfer of the security deed from the Hedricks to NovaStar was made when Nova Star paid off Astoria and Countrywide, which was on December 4, 2003. That date was within ten days of the exchange at the refinance loan closing. As a result, under § 547(e)(2)(A) the transfer was "made" at the time of the exchange, which was more than ninety days before the Hedricks filed their joint bankruptcy petition. Because the date of the exchange was more than ninety days before the bankruptcy petition was filed, the bankruptcy court held that the trustee was not entitled to avoid the transfer under § 547(b)(4)(A).

6

The court also held that, in any event, the trustee had failed to introduce sufficient evidence to survive summary judgment on one of the other elements of the avoidance provision: the requirement that the party seeking to avoid the transfer prove that the transferee received more from the transfer than it would have from Chapter 7 proceedings. See 11 U.S.C. § 547(b)(5)(A). On both of those grounds the bankruptcy court granted summary judgment to NovaStar. The district court did, too, and for the same reasons.

Whether the grant of summary judgment to NovaStar was correct depends on whether the transfer of interest in the Hedricks' property was "made" outside the ninety-day preference avoidance period under § 547(b)(4)(A), which in turn depends on when NovaStar's security deed was perfected. See 11 U.S.C. §547(b)(4)(A) (conditioning the trustee's ability to avoid the transfer on it having been "made . . . on or within 90 days before the date of the filing of the petition").

When a transfer is "made" for § 547(b)(4)(A) purposes depends on when it is perfected. If the transfer is perfected within ten days of the exchange, it is considered to have been made when it occurred. 11 U.S.C. § 547(e)(2)(A). If the transfer is perfected more than ten days after the exchange, it is considered to have been made at the time it is perfected, which will be after the transfer occurred. Id. § 547(e)(2) (B). A transfer "is perfected when a bona fide purchaser of such

7

property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." Id. § 547(e)(1)(A).

The Bankruptcy Code does not define the term "bona fide purchaser." Straight v. First Interstate Bank of Commerce (In re Straight), 207 B.R. 217, 228 (B.A.P. 10th Cir. 1997). However, that term in the federal statute takes its common, ordinary meaning. See id. (applying the definition of "bona fide purchaser" in Black's Law Dictionary to the term in § 545 of the Bankruptcy Code); see also United States v. Watkins, 320 F.3d 1279, 1284 (11th Cir. 2003) (using the term "bona fide purchasers[,] as that term is commonly defined," in applying a federal civil forfeiture statute); United States v. Hunter (In re Walter), 45 F.3d 1023, 1030 (6th Cir. 1995) ("Where a statutory lien is created by federal law . . . the characteristics of a bona fide purchaser will . . . be determined by federal law."); see generally Griffith v. United States (In re Griffith), 206 F.3d 1389, 1392 (11th Cir. 2000) (en banc) ("In interpreting the language of a statute, we generally give the words used their ordinary meaning." (quoting Moskal v. United States, 498 U.S. 103, 108, 111 S. Ct. 461, 465 (1990)) (internal quotation marks omitted). The common, ordinary meaning of a "bona fide purchaser" is "[o]ne who buys something for value without notice of another's claim to the

8

property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims." Black's Law Dictionary 1271 (8th ed. 1999).

Whether an event is enough to put a purchaser on notice so that a bona fide purchaser "cannot acquire an interest that is superior to the interest of the transferee" is determined, the statute tells us by "applicable law," 11 U.S.C. § 547(e)(1)(A), which is to say the law of the state where the property is located. See Gen. Motors Acceptance Corp. v. Busenlehner (In re Busenlehner), 918 F.2d 928, 930 (11th Cir. 1991) (holding that state law determines when perfection occurs for purposes of the preference avoidance provision of the Bankruptcy Code), overruled on other grounds by Fid. Fin. Servs., Inc. v. Fink, 522 U.S. 211, 118 S. Ct. 651 (1998); see also Corn Exch. Trust Co. v. Klauder (In re Corn Exch. Nat'l Trust Co.), 318 U.S. 434, 436–37, 63 S. Ct. 679, 681 (1943) (holding that state law determines when an interest is perfected when interpreting the preference avoidance provision of the Bankruptcy Act). The Hedricks' home is in Georgia, so the law of that state determines when NovaStar's interest was perfected.

NovaStar's interest was perfected under Georgia law at the time a bona fide purchaser could no longer have obtained an interest from the Hedricks in their

home that was superior to NovaStar's. Under Georgia's recording statute, Ga. Code Ann. § 44-2-3, the world was on notice of NovaStar's security deed once it was recorded. Because of that, no one who purchased an interest after the recording of that security deed could have been a bona fide purchaser of an interest superior to NovaStar's. The dispute is whether a bona fide purchaser could have acquired an interest superior to NovaStar's during the period between the time NovaStar paid off the earlier creditors, thereby extinguishing their security deeds, and the time NovaStar's own security deed was recorded.

That determination turns on Georgia's doctrine of equitable subrogation and how it fits into the Bankruptcy Code. Equitable subrogation may benefit a party who "advances money to pay off an [earlier] encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance . . . [and] the new security is for any reason not a first lien on the property." See Bankers Trust Co. v. Hardy, 640 S.E.2d 18, 20 (Ga. 2007) (quoting Davis v. Johnson, 246 S.E.2d 297, 300–01 (Ga. 1978)). In those circumstances if the new creditor is "not chargeable with culpable or inexcusable neglect, [it] will be subrogated to the rights of the prior encumbrancer under the security held by [it], unless the superior or equal equity of others would be prejudiced thereby." Id. (emphasis omitted) NovaStar contends that no one could have obtained a superior interest to its

10

security deed because it acquired a first priority interest in the Hedricks' home through equitable subrogation once it paid the earlier creditors. The trustee contends that equitable subrogation does not benefit NovaStar for two reasons.

First, he argues that as a general matter equitable subrogation cannot perfect an interest under the Bankruptcy Code. It cannot, the trustee argues, because equitable subrogation operates through the creation of an equitable lien and equitable liens are not recognized under the Bankruptcy Code. But equitable subrogation does not create an equitable lien; instead, it is an equitable doctrine which affects the priority of property interests that exist apart from equity. Id. at 19–20. In any event, even if equitable subrogation is seen as creating an equitable lien, the Code still incorporates "applicable law" into the § 547(b) preference avoidance provision, meaning that Georgia law controls. See In re Busenlehner, 918 F.2d at 930; see also In re Corn Exch. Nat'l Trust Co., 318 U.S. at 436–37, 63 S. Ct. at 681. And the doctrine of equitable subrogation is alive and well in Georgia. See Bankers Trust Co., 640 S.E.2d at 20. Therefore, if the requirements of equitable subrogation are met in this case, NovaStar's security deed enjoys the same priority as the earlier security deeds that NovaStar paid off.

The trustee's second argument is that, even if equitable subrogation can operate to perfect the transfer of a property interest for Bankruptcy Code purposes,

11

it did not do so here.  His position is that the words "cannot acquire" in the §

547(e)(1)(A) definition of perfection of a transfer—"when a bona fide purchaser

of such property from the debtor against whom applicable law permits such

transfer to be perfected cannot acquire an interest that is superior to the interest of

the transferee"—requires us to determine if, under some hypothetical set of

circumstances, someone might have been able to prevent equitable subrogation

and get an interest superior to NovaStar's.  If that could have happened, the trustee

argues, then the interest was not perfected until it was recorded.

Even if the trustee is right about that, it does not carry the day for him

because no intervening buyer could, under any set of hypothetical facts, have been

a bona fide purchaser in this case.  And only a bona fide purchaser would have the

"superior or equal equity" necessary to prevent the operation of equitable

subrogation.  A bona fide purchaser is, as we have said, "one who has in good

faith paid valuable consideration for property without notice of prior adverse

claims."  Black's Law Dictionary at 1271.  What constitutes notice to the

hypothetical purchaser is determined by state law.  See In re Busenlehner, 918

F.2d at 930.  Any purchaser who acquired an interest in the Hedricks' property

during the period between the time NovaStar paid off the earlier debts and the time

it recorded its own security deed could not be a bona fide purchaser under Georgia

law, because the security deeds from the earlier debt remained on the record books and appeared to be in effect at all times during that period.

Georgia recognizes inquiry notice, which imputes knowledge of an earlier interest to a later purchaser of an interest in land whenever there is "[a]ny circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry." See Page v. Will McKnight Constr., Inc., 639 S.E.2d 381, 383 (Ga. Ct. App. 2006) (internal quotation marks and citation omitted). Under Rossville Federal Savings & Loan Association v. Chase Manhattan Bank, 154 S.E.2d 243 (Ga. 1967), a purchaser of an interest in property has inquiry notice, and thus cannot be a bona fide purchaser, if he acquires his interest before earlier creditors' security deeds are cancelled. Id. at 246.

In that case, Rossville Federal Savings held a security deed on a residential property. Id. at 245. In exchange for receiving a new security deed, First Trust Company sent a check to Rossville Federal to pay off the debt owed it. Id. After receiving that check, Rossville Federal sent its cancelled security deed to be recorded. Id. Before the check from First Trust cleared, First Trust, through an intermediary, sold the security deed to Chase Manhattan Bank. Id. Only after that happened was Rossville Federal's cancellation recorded. Id. The check from First Trust was returned for insufficient funds, and First Trust turned out to be

13

insolvent. Id. The Georgia Supreme Court held that Rossville Federal could set aside its cancellation of its security deed in the property, reasoning that Chase Manhattan had inquiry notice, and so was not a bona fide purchaser, because the First Trust deed was still recorded at the time Chase Manhattan took its interest. Id. at 246.[3]

In the present case no bona fide purchaser could acquire an interest superior to NovaStar's because the earlier security deeds were not cancelled until after the

---

[3] The trustee has a hypothetical about how a purchaser could have acquired an interest superior to NovaStar's in the present case. He posits the possibility that during the period between NovaStar's payment of the earlier debts and the recording of NovaStar's security deed, a purchaser of an interest in the Hedricks' property, although on record notice of the earlier security deeds held by Astoria and Countrywide, might have contacted those two earlier creditors. They, the trustee continues to posit, might have told the purchaser not to worry about their security deeds because the underlying debt had been paid. The penultimate posit would be that the purchaser did not bother to ask, and neither Astoria nor Countrywide volunteered, that the payoff of the debt owed to them had been by another creditor, NovaStar, which now had a new security deed on the property. And the final posit would be that the Hedricks committed fraud by giving the purchaser what purported to be a first priority security deed in return for valuable consideration from him.

The trustee's house of cards hypothetical collapses under the weight of the Rossville precedent. Exactly the same set of imaginary circumstances could be conjured up for the period between the time that First Trust paid off the debt owed to Rossville Federal and the time that First Trust's new security deed was recorded in that case. In spite of the theoretical possibility that a purchaser could have been harmed by the delay in recording the new interest, the Georgia Supreme Court still held that because Rossville Federal's deed provided inquiry notice until its cancellation was recorded, there was no room for a bona fide purchaser. Rossville Fed. Sav. & Loan Ass'n, 154 S.E.2d at 246. That is the "applicable law." Applying it here, no bona fide purchaser could have acquired an interest superior to NovaStar's during the period between the time that NovaStar paid off the earlier debts and the time that it recorded its new security deed, because the earlier security deeds remained uncancelled insofar as the public recordings were concerned.

14

NovaStar security deed was recorded. Before NovaStar recorded its security deed, a hypothetical intervening purchaser would have inquiry notice of it under Rossville. After NovaStar recorded its security deed, a hypothetical intervening purchaser would have constructive notice of that deed under the recording statute. See Ga. Code Ann. § 44-2-3. Thus, anyone who might have acquired an interest in the Hedricks' property would have had notice of one kind or another and could not have been a bona fide purchaser. The NovaStar security deed was therefore perfected under Georgia's doctrine of equitable subrogation as soon as Astoria and Countrywide received the checks paying off the Hedricks' debts to them. See Bankers Trust Co., 640 S.E.2d at 20 (for equitable subrogation to apply a party must "advance[] money to pay off an encumbrance"); Baker v. Hous. Auth. of Waynesboro, 601 S.E.2d 350, 351 (Ga. Ct. App. 2004) (defining "paid" to mean ". . . discharge of a debt or liability, by the delivery of money or other value by a debtor to a creditor" (emphasis added, citation omitted)). If NovaStar's security deed had not been properly recorded before the other security deeds were cancelled, it would not have been perfected until it was recorded or the world was put on notice by some other means. That, however, is not what happened.

NovaStar's checks to Astoria and Countrywide were sent on December 10, 2003 and cleared NovaStar's escrow account on December 12, 2003. Therefore,

15

the latest that NovaStar perfected its interest under the doctrine of equitable subrogation was December 12, 2003. NovaStar's loan to the Hedricks closed on December 4, 2003. Because the delivery and the closing occurred within ten days of each other, the transfer was "made" at the closing for purposes of § 547(e)(2)(A)'s relation-back provision. The avoidance period, which was the ninety days preceding the Hedricks filing their joint Chapter 7 petition, did not begin until January 6, 2004. Therefore, the December 4, 2003 transfer at the closing was "made" outside the ninety day avoidance period, and the trustee may not avoid the security deed.

Because this is the case, we need not address the bankruptcy court's other ground for affirming the bankruptcy court's grant of summary judgment to NovaStar. We do, however, need to turn to the other case in this consolidated appeal.

## II.

Santosh Sharma and Sanjiv Gupta, a non-debtor, jointly owned a home. Each had taken loans and given liens on his share of the property. On May 20, 2003, the two of them refinanced their debts by obtaining a $225,000 loan from ABN. ABN secured the loan with a first priority security deed on the home. The bulk of the new loan, $194,110.06, was to be paid to Union Planters Bank to fully

16

satisfy the outstanding balance on Sharma's debt. The remainder, $27,860.85, was to be paid to Atlantic States Bank to fully satisfy Gupta's debt.

The federally mandated rescission period on the refinancing ended on May 23, 2003. On the next business day, which, due to the Memorial Day holiday, was May 27, 2003, ABN sent disbursements by Federal Express to Union Planters and Atlantic. The parties agree that the checks could not have arrived before the following day, May 28, 2003. Also on May 28, ABN sent its security deed to the county clerk to be recorded, but it was not actually recorded until June 10, 2003.

On June 18, 2003, Santosh Sharma and her husband, Som Sharma, filed their joint petition for Chapter 7 bankruptcy. The county clerk recorded the cancellation of the Union Planters and Atlantic deeds to secure debt on the Sharma home on June 23 and 26, 2003, respectively.

In the bankruptcy court proceedings, ABN and the trustee both agreed that the transfer of the security deed to ABN was made within the ninety days preceding the filing of the Sharmas' bankruptcy petition. Ninety days before the petition was filed was March 20, 2003, two months before ABN's loan to the Sharmas closed. Although a trustee generally can avoid a transfer occurring within the ninety days before a debtor files a Chapter 7 bankruptcy petition if the transfer meets the other requirements of the preference avoidance provision, 11

17

U.S.C. §547(b), there are exceptions. One of them is the contemporaneous exchange exception, id. § 547(c)(1), which exempts from avoidance transfers that are intended to be contemporaneous and are in fact at least substantially contemporaneous. The bankruptcy court granted summary judgment for ABN because, applying the doctrine of equitable subrogation, it found that the contemporaneous exchange exception applied. The district court agreed.

We have already discussed in some detail the doctrine of equitable subrogation in connection with the preference avoidance issue in the Hedricks' case. In the present case, ABN's security deed in the Sharma home acquired the priority of the earlier interests under the doctrine of equitable subrogation on May 28, 2003, when the checks from ABN arrived at Union Planters and Atlantic to pay off the Sharmas' debts to those two creditors. At that time, the exchange between ABN and the Sharmas was complete—ABN had given Union Planters and Atlantic the money necessary to satisfy the Sharmas' debts, and ABN had received a security deed in the Sharmas' home, which was immediately perfected through equitable subrogation.

Because May 28, 2003 is fewer than ninety days before the Sharmas filed for bankruptcy on June 18, 2003, the question is whether ABN qualifies for an exception to the § 547(b) preference avoidance provision. ABN contends that the

18

eight days between the time the loan closed and the time it received a perfected

interest in the Sharma home is close enough to be "substantially

contemporaneous" for purposes of the § 547(c)(1) exception. If so, then the

transfer of the security deed to ABN cannot be avoided by the trustee.

The exception applies when the transfer was: "(A) intended by the debtor

and the creditor to or for whose benefit such transfer was made to be a

contemporaneous exchange for new value given to the debtor; and (B) [was] in

fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1). The

trustee does not dispute that the security deeds were intended to be

contemporaneous exchanges for new value given to the debtor, so the

subparagraph (A) condition is met. The trustee does, however, contend that the

exchange was not in fact substantially contemporaneous, as required by the

subparagraph (B) condition.

We have not yet had the opportunity to define the term "substantially

contemporaneous" in § 547(c)(1)(B) outside the context of enabling loans.[4] Other

---

[4] Enabling loans (i.e. purchase money security interests) have a specific exception to avoidance, which is found in § 547(c)(3). If the enabling loan is perfected in the statutorily defined period a trustee cannot avoid it. 11 U.S.C. § 547(c)(3). In Gower v. Ford Motor Credit Co. (In re Davis), 734 F.2d 604 (11th Cir. 1984), a decision limited to enabling loans, we held that for an exchange that involves the transfer of an enabling loan to be "substantially contemporaneous" it must occur within the period of time allotted for perfection in § 547(c)(3), the enabling loan exception to avoidance. Id. at 605–07. We reasoned that Congress' intent in creating a specific provision governing enabling loans and a particular period for perfecting those

19

circuits have, and they have split over whether to transport the ten-day period specified in the relation-back provision, id. § 547(e)(2)(A), into "substantially contemporaneous," or instead define the term in a way that requires a case-by-case consideration of all the facts in order to decide if a given transfer was substantially contemporaneous. Compare Collins v. Greater Atl. Mortg. Corp. (In re Lazarus), 478 F.3d 12, 19 (1st Cir. 2007) (interpreting "substantially contemporaneous" as requiring the exchange to occur within the ten day relation-back period under § 547(e)(2)(A)), and Ray v. Sec. Mut. Fin. Corp. (In re Arnett), 731 F.2d 358, 363 (6th Cir. 1984) (same), with Lindquist v. Dorholt, Inc. (In re Dorholt Inc.), 224 F.3d 871, 874 (8th Cir. 2000) (holding that whether an exchange is "substantially contemporaneous" must be determined on a case-by-case basis), and Dye v. Rivera (In re Marino), 193 B.R. 907, 915 (B.A.P. 9th Cir. 1996) (same), aff'd, 117 F.3d 1425 (9th Cir. 1997); see also Pine Top Ins. Co. v. Bank of Am. Nat'l Trust &

---

loans would be circumvented by allowing creditors to perfect their interests outside that period and then use the contemporaneous exchange exception to prevent avoidance of their interests. Id. at 607.

The present case, however, does not involve an enabling loan, nor is there a specific provision in the Code that requires perfection of non-purchase money security deeds within a particular time, so In re Davis' holding does not control and its reasoning is not helpful here. See Pongetti v. GMAC (In re Locklin), 101 F.3d 435, 443 n.9 (5th Cir. 1996) ("We must distinguish carefully here between cases involving purchase money security interests and nonpurchase money security interests. In the former, circuit courts have uniformly ruled that lenders who failed to perfect within 10 days may not take advantage of the § 547(c)(1) exception. In the latter, circuit courts have split.").

20

Sav. Ass'n, 969 F.2d 321, 328 (7th Cir. 1992) (interpreting "substantially contemporaneous" in 11 U.S.C. § 547(c)(1)(B) to require a flexible inquiry in a state insurance law case).

We are unconvinced by the reasons that the First and Sixth Circuits have given for writing into § 547(c)(1)(B)'s "substantially contemporaneous" term the ten-day rule contained in § 547(e)(2)(A).  See In re Lazarus, 478 F.3d at 19; In re Arnett, 731 F.2d at 363.  The result in those circuits is a bright line rule that is drawn at the expense of adherence to the statutory language.  Section 547(c)(1)(B) does not set out a bright line rule.  It does not refer in any way to the ten-day period contained in § 547(e)(2)(A) or to any other provision's time standard.  Congress chose, for whatever reason, not to make ten days the time measure for § 547(c)(1)(B); it chose instead to make "substantially contemporaneous" the standard.

We have no license to assume that Congress did not mean what it said in § 547(c)(1)(B), but we are instead bound to assume that it meant exactly what it said.  See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000) ("[W]e begin with the understanding that Congress says in a statute what it means and means in a statute what it says there. . . . [W]hen the statute's language is plain, the sole function of the courts—at least

21

where the disposition required by the text is not absurd—is to enforce it according to its terms." (citations and internal quotation marks omitted)); United States v. LaBonte, 520 U.S. 751, 757, 117 S. Ct. 1673, 1677 (1997) ("We do not start from the premise that this language is imprecise. Instead, we assume that in drafting this legislation, Congress said what it meant."); see also United States v. Fisher, 289 F.3d 1329, 1338 (11th Cir. 2002) ("The plain language is presumed to express congressional intent and will control a court's interpretation."). What Congress said in § 547(c)(1)(B) is not "within ten days" but "substantially contemporaneous." The plain meaning of that term conveys flexibility—the opposite of a hard and fast, bright line rule—and requires a case-by-case approach focused on the facts and circumstances. See Pine Top, 969 F.2d at 328.

The existence of a precise, bright line time measure in § 547(e)(2)(A) and in other parts of the Code, see, e.g., 11 U.S.C. § 547(c)(3)(B) (twenty-day rule in the enabling loans exception), does not weigh in favor of courts substituting one for the "substantially contemporaneous" measure specified in § 547(c)(1)(B). Instead, it weighs heavily against doing so because it shows that Congress knew how to write specific deadlines and precise time measures into the Code and did so when it believed use of one to be the best policy choice. The presence of specified time measures elsewhere in the Act makes the absence of one in § 547(c)(1)(B) all the

more telling.  See Duncan v. Walker, 533 U.S. 167, 173, 121 S. Ct. 2120, 2125 (2001) ("It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)); Delgado v. United States Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling." (internal quotation marks and citation omitted)); DIRECTV, Inc. v. Brown, 371 F.3d 814, 818 (11th Cir. 2004) ("As we have previously stated, when Congress uses different language in similar sections, it intends different meanings." (internal quotation marks omitted)).

We might believe, as the First and Sixth Circuits apparently do, that Congress chose poorly in deciding not to use a more precise, easier to apply, bright line standard in § 547(c)(1)(B).  It may be that revising the provision by importing a different standard from another part of the statute would improve things—it would certainly make it easier for courts to apply the provision.  In re Lazarus, 478 F.3d at 19; In re Arnett, 731 F.2d at 364.  We are not, however, authorized to revise statutory provisions in the guise of interpreting them.  See Artuz v. Bennett, 531 U.S. 4, 10, 121 S. Ct. 361, 365 (2000) ("Whatever merits

23

these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them."); Badaracco v. Comm'r, 464 U.S. 386, 398, 104 S. Ct. 756, 764 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."); Albritton v. Cagle's, Inc., 508 F.3d 1012, 1017 (11th Cir. 2007) ("We are not empowered to rewrite statutes."); United States v. Griffith, 455 F.3d 1339, 1343 (11th Cir. 2006) ("The legislative branch does not require the help of the judicial branch for . . . simple drafting task[s]."); Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not rewrite it.").

We disagree with the premise of the First and Sixth Circuits that a court is authorized to interpret a statute contrary to the plain meaning of its words if doing so would, in the court's view, better further the purpose it thinks Congress had in mind. See In re Lazarus, 478 F.3d at 17–18 (stating that not interpreting "substantially contemporaneous" to mean within ten days would "specifically undercut Congress' purpose"); In re Arnett, 731 F.2d at 363. As the Supreme Court recently reminded us, "law depends on respect for language." Watson v. United States, ___ U.S. ___, ___, 128 S. Ct. 579, 585 (2007). We interpret and

24

apply statutes, not congressional purposes. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79, 118 S. Ct. 998, 1002 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."); United States v. Maung, 267 F.3d 1113, 1121 (11th Cir. 2001) ("[W]e are governed by the language Congress enacts, not by purported designs or intentions that conflict with that language."); CBS, Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1227 (11th Cir. 2001). In any event, "[t]he best evidence of that [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President." W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98, 111 S. Ct. 1138, 1147 (1991), superceded by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, § 113, 105 Stat. 1071, 1079 (1991); see Aldridge v. Williams, 44 U.S. (3 How.) 9, 24 (1845) ("The law as it is passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself . . . .").

Nor do we agree with the First and Sixth Circuits that copying the ten-day rule from § 547(e)(2)(A) and pasting it over the "substantially contemporaneous" rule in § 547(c)(1)(B) is necessary to avoid negating § 547(e)(2). In re Lazarus, 478 F.3d at 18; In re Arnett, 731 F.2d at 363. The Sixth Circuit thought it necessary because otherwise "section 547(c)[(1)] effectively negates section

25

547(e)(2)," and "[s]uch hopeless conflict cannot have been intended by Congress." In re Arnett, 731 F.2d at 363. We disagree with the central premise. Reading the two provisions to mean exactly what they say does not negate either one of them, and there is no "hopeless conflict," intended or otherwise.

Section 547 of the Bankruptcy Code deals with preferences. The general rule, set out in subsection (b) of that section, is that interests acquired within the ninety days before a debtor files a petition for Chapter 7 bankruptcy can be avoided by the bankruptcy trustee if it meets the other requirements in that subsection. There are exceptions to that general rule. One of those exceptions, which is set out in paragraph (c)(1) of § 547, provides that a transfer within ninety days may not be avoided by the trustee if two conditions are met. One condition is that the transfer was intended by both the debtor and the creditor to be a contemporaneous exchange for new value given, 11 U.S.C. § 547(c)(1)(A); the other condition is that the transfer was in fact a substantially contemporaneous exchange, id. § 547(c)(1)(B). That exception depends solely on those two conditions having been met. It does not require that the transfer have been perfected in ten days or any specified number of days.

Section 547(e)(2), by contrast, is not an exception to the general rule about avoiding transfers made within ninety days of the filing of a bankruptcy petition.

26

It has a different purpose and field of operation than an exception. It is, instead, a provision that has to do with calculating the time of transfers for purposes of the preference provisions contained in other parts of § 547. Section 547(e)(2)(A) and (B) divide transfers into two categories: those that were perfected within ten days, which are to be considered as made when the transfer occurred; and those that were not perfected within ten days, which are to be considered as made when they were perfected.

Section 547(e)(2)(A)'s purpose is to move some transfers that occur within the ninety-day preference avoidance period and would otherwise be avoidable outside of that period. The transfers it applies to are those that take place within eighty to ninety days before the petition is filed, provided that they are perfected within ten days. There is no "substantially contemporaneous" requirement or inquiry under § 547(e)(2)(A); all that counts is whether the time between the date the transfer occurred and the date it was perfected was ten days or less. If so, the provision operates to move the date the transfer was made to the date of the exchange instead of the date of perfection. If not, the creditor is stuck with the date of perfection.

By contrast, § 547(c)(1) does not fix or move the date the transfer of an interest was made. It does not contain a ten-day rule. Instead, it asks only whether

27

the transfer was meant to be a contemporaneous exchange for new value and, if so, whether it was "in fact a substantially contemporaneous exchange." If both of these conditions are met, the trustee may not avoid the transfer even if it was perfected more than ten days after the exchange and even if it occurred within ninety days, or nine days, or one day, of the filing of the bankruptcy petition.

Both § 547(c)(1) and § 547(e)(2)(A) have separate fields of operation, unless "substantially contemporaneous" is interpreted to mean "within ten days." If that interpretation is forced on the term "substantially contemporaneous," then § 547(e)(2)(A) will not have a field of operation. Every transfer for new value that would fit within the ten-day rule of that provision will automatically fit within the "substantially contemporaneous" standard of § 547(c)(1)(B) and be saved by § 547(c)(1), because the two time periods for preventing perfection to avoid avoidance will be the same. The irony of the First and Sixth Circuits' interpretation is that it brings about the very result it seeks to avoid. It renders one provision superfluous, which is an interpretative no-no. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S. Ct. 1146, 1149 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous . . . ."); United States v. Menasche, 348 U.S. 528, 538–39, 75 S. Ct. 513, 520 (1955) ("The cardinal principle of statutory construction is to save and not to destroy. It is our

28

duty to give effect, if possible, to every clause and word of a statute . . . ." (internal quotation marks and citations omitted)); Platt v. Union Pacific R.R. Co., 99 U.S. 48, 58 (1879) ("[A] legislature is presumed to have used no superfluous words.").

Nor can the rewriting of the plain meaning of the words "substantially contemporaneous" in § 547(c)(1)(B) be justified on the basis of intent revealed in the legislative history of the provision. The primary reason is that courts must not resort to legislative history to cloud the meaning of statutory text that is plain. Ratzlaf v. United States, 510 U.S. 135, 147–48, 114 S. Ct. 655, 662 (1994); see Darby v. Cisneros, 509 U.S. 137, 147, 113 S. Ct. 2539, 2545 (1993) ("Recourse to the legislative history of [the statute at issue] is unnecessary in light of the plain meaning of the statutory text."); Ins. Co. v. Ritchie, 72 U.S. 541, (5 Wall.) 541, 545 (1867) ("[W]hen terms are unambiguous we may not speculate on probabilities of intention."); Harris, 216 F.3d at 976 ("When the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.").

In addition, even if we could resort to legislative history in construing the meaning of "substantially contemporaneous" in § 547(c)(1)(B), it would only reinforce the plain meaning of that term. The House Committee Report contained

29

this commentary on the provision at issue:

> The first exception [(§ 547(c)(1))] is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3-503 (2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

H.R. Rep. No. 95-595, at 373 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6329. Using payment of a check "in the normal course of affairs" as an example of a "substantially contemporaneous" exchange is antithetical to the notion of a bright line rule specifying a precise number of days. Besides, if one were going to substitute a set number of days for the "substantially contemporaneous" measure, this legislative history shows that Congress would have favored the thirty-day period specified in U.C.C. § 3-503 (2)(a), instead of the ten-day period specified in § 547(e)(2) at that time. The lesson we draw is that legislative revision is best left to the legislative branch.

For all of these reasons, we agree with the Eighth and Ninth Circuits that "substantially contemporaneous" does not mean the same thing as "within ten days." In re Dorholt, Inc., 224 F.3d at 874; In re Marino, 193 B.R. at 915. We join them in holding that, unlike the ten-day bright line rule of § 547(e)(2)(A), the

30

"substantially contemporaneous" rule of § 547(c)(1)(B) requires an examination of all the facts and circumstances.  In re Dorholt, Inc., 224 F.3d at 874; In re Marino, 193 B.R. at 915.  It is a flexible standard that requires courts to make individualized findings.

In doing so, courts should take into account the objective reasonableness of the time taken to perfect the interest, the cause of any delay, and the motivations for it.  The length of the delay between the transfer and perfection is one factor, although it is not necessarily dispositive.  See In re Marino, 193 B.R. at 916.  In considering the length of the delay, the nature of the transaction and how long a creditor in that type of transaction usually takes to perfect its interest in the normal course of affairs are relevant.  See Pine Top, 969 F.2d at 328 (including "nature of the transaction" in "relevant circumstances" to determine whether an exchange is "substantially contemporaneous"); H.R. Rep. No. 95-595, at 373, as reprinted in 1978 U.S.C.C.A.N. at 6329 ("[In] a transfer involving a check[,] . . . if the check is presented for payment in the normal course of affairs . . . that will amount to a transfer that is 'in fact substantially contemporaneous.'").

When considering whether the delay in perfection of the interest is reasonable given the creditor's specific circumstances, courts should again consider all the relevant facts.  See In re Arnett, 731 F.2d at 360 ("The

31

construction given to section 547(c)(1) by the lower courts in this case requires examination of all circumstances surrounding the transaction giving rise to the transfer. Thus, where delayed perfection of a security interest may be satisfactorily explained, and in the absence of dilatoriness or negligence on the part of a transferee, the transfer may still be found 'substantially contemporaneous' with the exchange of new value to the debtor, regardless of the lapse of time."). The most important fact may be whether the delay in perfecting the interest was the result of negligence or intentional delay by the creditors. See In re Marino, 193 B.R. at 916 (noting that the creditor being "neither dilatory nor negligent in his actions is significant"). In particular, if the reason for delay is that the creditor is attempting to obtain secret liens, then this factor will weigh so heavily against the creditor that it ordinarily will be dispositive. See Pine Top, 969 F.2d at 328 (including "intentions of the parties" and "possible risk of fraud" in "relevant circumstances" to determine whether an exchange is "substantially contemporaneous").

Because we review de novo legal conclusions of the bankruptcy and district courts, Hemar Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003), and the historical facts are not in dispute, we need not remand the Sharmas' case. We can decide ourselves whether the transfer of the security deed

32

from the Sharmas to ABN falls within the § 547(c)(1) exception. See Spaziano v. Singletary, 36 F.3d 1028, 1041–42 (11th Cir. 1994) ("No remand will be necessary, because the . . . issue is purely one of law and we would review the district court's decision of it de novo anyway."); Macklin v. Singletary, 24 F.3d 1307, 1312 (11th Cir. 1994) ("[W]ith issues subject to de novo review on appeal, our scope of review is at its broadest and our willingness to decide without the benefit of a district court ruling should increase commensurately.").

Under equitable subrogation, ABN's interest was perfected when Union Planters and Atlantic received their checks from ABN to pay off the Sharmas' debts, which the parties agree probably occurred on May 28, 2003. This was eight days after the closing. ABN sent its deed to be recorded on that same date, the first business day after the federally mandated recision period had ended. The trustee does not even suggest that ABN was attempting to acquire a secret lien or otherwise acted with bad faith. Nor does he contend that waiting until after a federal holiday to send a deed to be recorded was outside the normal course of affairs for this kind of transaction. Considering all of the circumstances, we conclude that this was a substantially contemporaneous exchange under § 547(c)(1), so the trustee may not avoid it.

AFFIRMED.