# United States Court of Appeals
## For the First Circuit

---

No. 06-1982

IN RE:  CHRISTINE H. LAZARUS,

Debtor.

_____

JOSEPH B. COLLINS, TRUSTEE IN BANKRUPTCY OF CHRISTINE H. LAZARUS,

Appellant,

v.

GREATER ATLANTIC MORTGAGE CORPORATION and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

---

Before
Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

---

Steven A. Munson with whom Hendel & Collins, P.C. was on brief for appellant.
Jennifer Rood with whom Bernstein Shur was on brief for appellees.

---

January 9, 2007

---

**BOUDIN**, **Chief Judge**.   On August 17, 2001, Christine Lazarus and her sister purchased real property in Springfield, Massachusetts--Lazarus' residence--as joint tenants, taking out a loan secured by a mortgage from Washington Mutual.   In a refinancing on June 22, 2004, both sisters executed a promissory note, and a mortgage on the property to secure the note, in favor of Greater Atlantic Mortgage Corporation ("GAMC").[1]

On July 1, 2004, GAMC paid the funds generated by the note, in the amount of just over $96,000, to Washington Mutual to discharge the latter's loan to the sisters and terminate the latter's mortgage interest.   The new mortgage was recorded on July 15, 2004, in the county registry of deeds.   The discharge of the Washington Mutual mortgage was recorded on August 3, 2004.   On September 29, 2004, Lazarus filed for chapter 7 bankruptcy.

In January 2005, the trustee in the Lazarus bankruptcy case sought to avoid the GAMC mortgage on the ground that it constituted a preferential transfer of Lazarus' property made within the 90-day period preceding the filing of the bankruptcy petition.   Under section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b) (2000):

> [T]he trustee may avoid any transfer of an interest of the debtor in property--

---

[1]GAMC was represented in the papers by its agent, Mortgage Electronic Registration Systems, Inc. ("MERS"), but it simplifies the discussion to treat GAMC as the affected party.

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--
(A) on or within 90 days before the date of the filing of the petition; or
(B) . . .

(5) that enables such creditor to receive more than such creditor would receive if--
(A) the case were a case under Chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

On cross motions for summary judgment, the bankruptcy judge declined to set aside the mortgage. In re Lazarus, 334 B.R. 542, 553-54 (Bankr. D. Mass. 2005). The judge said that no creditor could have been prejudiced by GAMC's delay in perfecting its mortgage because Washington Mutual left its mortgage "on the books" until after GAMC had recorded its mortgage; thus, the property never appeared to be unencumbered. The district court affirmed with a short opinion adopting the reasoning of the bankruptcy judge.

On this appeal, the trustee claims that the mortgage should have been set aside, making the secured property or at least

Lazarus' interest in it--other than any exempted interest--available to all creditors. The issues, matters of law that we review de novo, In re DN Assocs., 3 F.3d 512, 515 (1st Cir. 1993), are two: whether there was a preferential transfer under section 547(b) and, if so, whether it was rescued from avoidance by section 547(c), which provides exceptions to section 547(b).

The dispute as to section 547(b) is narrowed by agreement that the allegedly preferential transfer was of "an interest in property" (the new mortgage); that it was "to or for the benefit of a creditor" (GAMC); that the Lazarus note was an "antecedent debt"; that the transfer was made while Lazarus was "insolvent"; and that it was made within 90 days of Lazarus' later bankruptcy filing. Further, unless avoided, the mortgage would give GAMC "more than it would receive" as a general creditor.

GAMC purports to dispute this last proposition by saying that it would not have made the loan without the mortgage and so no general creditor was made worse off by the refinancing. This is a different issue--a claim of no prejudice--to which we will return. But the fact remains that recognizing the mortgage would give GAMC "more than it would receive" without it, which is why it is fighting to retain the mortgage.

GAMC's concession that the note was for an antecedent debt requires somewhat more explanation. Although the note and mortgage were executed and apparently delivered to GAMC on the same

-4-

day, section 547(e) provides that for real property (with an exception not here relevant), a "transfer is made" when it occurs only if the transfer is perfected within 10 days of the actual transfer; otherwise it is deemed made only "at the time such transfer is perfected."  11 U.S.C. § 547(e)(2)(A), (B).[2]

Perfection, in this case, required the filing of the mortgage with the local registry of deeds.  Because this filing occurred 14 days after the initial transfer of funds, section 547(e) requires that the transfer be deemed to have occurred on the date of perfection.  The mortgage, therefore, secured a debt antecedent to the transfer rather than simultaneous with it.  GAMC does not dispute this reading of the statute.

What GAMC does seriously dispute is that the transferred property interest was that "of the debtor."  This might seem an odd position--after all, Lazarus did grant a mortgage interest in favor of GAMC in property she co-owned.  However, GAMC relies on the so-called "earmarking doctrine" in contending that the transfer ought to be viewed in substance as a transfer of the mortgage from Washington Mutual to GAMC.

Where funds received by the debtor are "earmarked" for another, courts have sometimes held that the funds are not "really"

_____

[2]After the events in this case, the time period was extended by Congress to 30 days, but the amendment has no effect on this case.  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 403 (codified at 11 U.S.C. § 547(e)(2)).

-5-

the debtor's property so that the retransfer to the final recipient is not a preference under section 547(b).  E.g., In re Superior Stamp & Coin Co., 223 F.3d 1004, 1010 (9th Cir. 2000).  In the classic case, one who has guaranteed a debt of the debtor gives the debtor the funds to pay off the creditor and the debtor does so but then goes bankrupt shortly thereafter.

Under the earmarking approach, courts view the funds as transferred by the guarantor to the creditor through, but not by, the debtor. If the earmarked funds were treated as those of the debtor, the guarantor's payment could often be recaptured from the original creditor as an avoidable preference and the guarantor would then have to pay twice.  Further, the earmarking approach leaves the estate no worse off than it would have been if the guarantor had advanced nothing to the debtor but paid off the debt directly.

Most circuits who have spoken have extended this earmarking concept to situations where a new creditor--not a guarantor--advances funds to the debtor to pay off debts to other creditors, substituting itself for the old creditor.[3]  In the

---

[3]E.g., In re Superior Stamp & Coin Co., 223 F.3d at 1010; Coral Petroleum, Inc. v. Banque Paribas-London, 797 F.2d 1351, 1356 (5th Cir. 1986).  Other circuits have recognized the doctrine. E.g., In re Kumar Bavishi & Assocs., 906 F.2d 942, 944 (3d Cir. 1990); In re Montgomery, 983 F.2d 1389, 1395 (6th Cir. 1993); In re Kelton Motors, Inc., 97 F.3d 22, 27 (2d Cir. 1996); In re Bohlen Enters. Ltd., 859 F.2d 561, 566 (8th Cir. 1988) (recognizing, but expressing doubts).  The decisions require that the new creditor have an agreement with the debtor to pay off a particular creditor.

substitute creditor case, as with the guarantor example, the earmarking doctrine relies on a conceptual view that the payment passing through the debtor's hands is not his and that he is merely a kind of bailee.

The bankruptcy judge in this case extended the earmarking approach to the case before us, concluding that there was effectively a transfer of a security interest from Washington Mutual to GAMC without disadvantaging the estate. In re Lazarus, 334 B.R. at 553-54. But use of the earmarking doctrine in this case is not conceptually similar to the guarantor or new creditor cases where it could plausibly be argued that there was merely an arrangement between third parties with no property transfer by the debtor.

Rather, in refinancing there are multiple transactions, including a new loan to the debtor, a mortgage back from the debtor to the new lender, a pre-arranged use of the proceeds of the loan to pay off the old loan and the release of the old mortgage. Thus, new proceeds are generated, nominally for the benefit of the debtor, and the debtor, by making a new mortgage, transfers a property interest to the new lender.[4]

---

2 Collier on Bankruptcy ¶ 547.03, at 547-24 (15th ed. 2006).

[4]In this case, the trustee is not seeking to recover for the estate loan proceeds paid on the debtor's behalf by the new lender to the original lender--which would confront a number of obstacles--but only to address the grant of the new mortgage by the debtor to the new lender.

Thus, in this case, Lazarus made a new mortgage in favor of GAMC, probably on different terms than the original (or there would have been no benefit to refinancing).  Then, when GAMC paid off Washington Mutual's loan, the latter released its own mortgage.  This did not transfer the old mortgage to GAMC; it merely meant that GAMC's mortgage was now first in line rather than a subordinate mortgage.  The debtor did not act merely as a bailee with the mortgage passing through her hands from Washington Mutual to GAMC.

Thus, the earmarking concept does not provide GAMC an escape from the plain language of section 547(b) in the case of a belatedly-perfected transfer of a security interest.  Although one circuit supports the bankruptcy judge's use of the earmarking doctrine in a like case, In re Heitkamp, 137 F.3d 1087, 1089 (8th Cir. 1998);  see also In re Lee, 339 B.R. 165, 170 (E.D. Mich. 2006), this approach has been justly opposed on the ground that it amounts to ignoring the statutory language.[5]  To avoid the statutory language, GAMC resorts to the underlying policy arguments ably argued by GAMC's counsel.

GAMC's first point in response is that although formally the mortgage was given for an antecedent debt, the preexisting

_____

[5]E.g., In re Messamore, 250 B.R. 913, 917 (Bankr. S.D. Ill. 2000);  In re Shreves, 272 B.R. 614, 625 (Bankr. N.D. W. Va. 2001); In re Schmiel, 319 B.R. 520, 528 (Bankr. E.D. Mich. 2005).  See generally Rogers, Applicability of the Earmarking Defense to a Preference Action, 25 Am. Bankr. Inst. J. 20 (May 2006).

creditors would be in about the same position if no refinancing had occurred. Nor is there any indication that any new creditor lent money, during the refinancing, believing that the Washington Mutual mortgage had been released; indeed, as the bankruptcy judge noted, the old mortgage was discharged but the discharge was itself not timely recorded.

Conversely, if the transaction is deemed an avoidable preference, GAMC will still hold the unpaid note but GAMC seemingly will lose its status as a secured creditor of Lazarus vis à vis the other creditors. This may, or may not, be as bad as a guarantor having to pay twice; but it is certainly a penalty. But the penalty is not without a general benefit--pour encourager les autres--and is easily avoided by recording within 10 days as the statute directed.

Probably other creditors were not prejudiced in this instance; but the formal requirements of section 547 were designed to work mechanically, avoiding the necessity of demonstrating prejudice. The Code lays down formal requirements with substantive consequences. The litigation in this case is one of the costs of ignoring the statute; the costs would be greatly multiplied if in each instance inquiry had to be made as to whether or not prejudice had occurred.

The avoidable preference provision first appeared in the 1898 Code, framed in general terms. A preference was created when

an insolvent debtor made a transfer within four months of filing that enabled a creditor to obtain more than the other creditors in his class.  Act of July 1, 1898, ch. 541, § 60, 30 Stat. 544, 562.  Then, after an abortive experiment in 1903, Act of Feb. 5, 1903, ch. 487, § 13, 32 Stat. 797, 799-800, Congress in 1910 introduced into the section what was effectively a recording requirement for mortgages, albeit without a grace period.  Act of June 25, 1910, ch. 412, § 11, 36 Stat. 840, 842.

In 1938, through the Chandler Act, Congress introduced a more detailed definition of preference, Act of June 22, 1938, ch. 575, § 60, 52 Stat. 840, 869, and in 1950, a 21-day grace period for perfection was added.[6]  Act of Mar. 18, 1950, ch. 70, § 1, 64 Stat. 24, 26.  The legislative history reveals that this last was designed to create "an appropriately rigid time limitation."  H.R. Rep. No. 81-1293 (1949).  Then, in 1978, the then-new Bankruptcy Code reduced the time limit for perfection to 10 days, as it remained during the transactions in this case.  Bankruptcy Reform Act of 1978, Pub. L. No. 109-279, § 547(e)(2).

It is one thing to impose a gloss on the statute, such as the earmarking doctrine, that achieves formal compliance with the

---

[6]The grace period was added in response to concerns (well-founded or not) that courts would strictly interpret the concept of "antecedent debt" without consideration of the necessary lag between transfer and recording.  Morris, Bankruptcy Law Reform: Preferences, Secret Liens and Floating Liens, 54 Minn. L. Rev. 737, 750-51 (1970)

statute to rescue a transaction where no prejudice occurred.  It is another to make lack of prejudice itself a substitute for formal compliance.   The history of section 547 just recounted is of amendments that try to make the statute self-executing to avoid uncertainty and litigation costs; we will not undo that effort.

GAMC suggests an alternative route to the bankruptcy judge's outcome.  Section 547(b) is itself subject to exceptions set forth in section 547(c).  In particular, section 547(c)(1) excludes an otherwise avoidable transfer

> to the extent that such transfer was—-
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange.

The first of these two requirements is arguably satisfied.  The transfer being attacked--Lazarus' grant of a mortgage to GAMC--was intended to be a contemporaneous exchange for new value given to the debtor, namely, the loan to Lazarus from GAMC used to pay off Lazarus' debt to Washington Mutual.   The question, then, is whether under subsection (B) the exchange was in fact "substantially contemporaneous."

Because of the failure to perfect within 10 days, we must (under section 547(e)(2)(B)) treat the property transfer as occurring on recordation on July 15, 2004; because the debt arose

-11-

earlier--either on June 22 (when the note was signed) or July 1 (when the funds were disbursed)--it is antecedent but by only two or three weeks. GAMC says that this is contemporaneous enough; the trustee, that the 10-day period specified in section 547(e)(2) should control.

GAMC's plight, although of its own making, invites some sympathy, especially because there probably was no prejudice to creditors. At first blush the phrasing of section 547(c)(1)--the contemporaneous requirement--looks as if it affords us flexibility. However, the seeming flexibility is deceptive. We conclude that to expand the 10-day limitation would defy the governing canon of construction and specifically undercut Congress' purpose.

Section 547(c)(1) was aimed, as its legislative history shows, at a generic problem: those on the verge of bankruptcy still need to buy things (e.g., groceries or household items) and the fact that checks are used (with a brief gap between purchase and payment) ought not render the payment avoidable as one made for an antecedent debt. H.R. Rep. No. 95-595, at 373 (1977).

By contrast, section 547(e)'s 10-day limit is directed specifically to mortgages and applies even if the loan and mortgage are exchanged simultaneously. Congress' concern, therefore, was not with whether the exchange was simultaneous or nearly so, but with getting the mortgage recorded within a reasonably brief and

predefined period.  The aim was to combat secret liens and protect those who might lend in ignorance of the mortgage.

The House Report on the 1910 amendment, which introduced the modern perfection requirement, explained: "[A]s to other creditors and the rest of the outer world, the 'transfer' is . . . not a complete 'transfer' . . . at all until recording . . . . [This is] the bottom principle of the right to legislate against secret liens."  H.R. Rep. No. 61-511, at 8 (1910).  See generally Morris, Bankruptcy Law Reform:  Preferences, Secret Liens and Floating Liens, 54 Minn. L. Rev. 737 (1970).[7]

True, the later 10-day grace period was an arbitrary compromise--mechanical deadlines almost always are--and can result in losing security even where no one was prejudiced.  But such deadlines have the benefit of being specific and avoiding litigation about actual prejudice.  This was the approach Congress chose.  To enlarge the 10-day deadline for secured interests is to undo Congress' choice.

The cases on this precise issue are few and are divided. One circuit has flatly rejected the attempt to use section

---

[7]In 1973, the Commission assisting Congress in drafting what would become the 1978 Code, noted that "[o]ne of the essential features of any bankruptcy law is the inclusion of provisions designed to invalidate secret transfers."  Transmitting a Report of the Commission on the Bankruptcy Laws of the United States, at 18 (Sept. 6, 1973).  See also Weisberg, Commercial Morality, the Merchant Character, and the History of the Voidable Preference, 39 Stan. L. Rev. 3 (1986).

547(c)(1) to extend the 10-day period, while another has allowed such an extension, supported by a summary affirmance in another circuit of such an extension by a bankruptcy appellate panel where the delay in perfection was satisfactorily explained.[8] But nothing in the latter two cases does anything to answer our concern that this is simply an end run around the 10-day limit and so a disregard of Congress' specific intent.

In statutory construction, the more specific treatment prevails over the general. United States v. Lara, 181 F.3d 183, 198 (1st Cir. 1999); Diaz v. Cobb, 435 F. Supp. 2d 1206, 1213 n.7 (S.D. Fla. 2006) (lex specialis derogat lex generalis). No direct conflict is required: the rationale against applying a general provision in this circumstance is to protect against "undermin[ing] limitations created by a more specific provision." Varity Corp. v. Howe, 516 U.S. 489, 511 (1996).

---

[8]Compare In re Arnett, 731 F.2d 358, 364 (6th Cir. 1984), with In re Dorholt Inc., 224 F.3d 871, 874 (8th Cir. 2000), and In re Marino, 193 B.R. 907, 915 (B.A.P. 9th Cir. 1996), aff'd, 117 F.3d 1425 (9th Cir. 1997). Yet another circuit decided a similar issue in the state insurance context (relying on interpretations of the federal bankruptcy code), Pine Top Ins. Co. v. Bank of Am. Nat'l Trust and Sav. Ass'n, 969 F.2d 321 (7th Cir. 1992), and its holding has been expanded by other courts to federal bankruptcy. See In re McLaughlin, 183 B.R. 171, 175 (Bankr. W.D. Wis. 1995). But see In re Messamore, 250 B.R. at 920 & n.11 (noting that Pine Top might not be controlling, but finding a failure to meet even this flexible standard). In the context of section 547(c)(3), other circuits have held that section 547(c)(1) cannot be used to give more flexibility to the limitation given in section 547(c)(3). See, e.g., In re Davis, 734 F.2d 604, 606-07 (11th Cir. 1984).

Our case illustrates this warning.  Congress has been laboring for many years to devise and refine a specific, largely mechanical test to govern security interests in the context of antecedent debt.  The contemporaneousness test was added late in the day to address a much broader generic problem--ordinary exchange of goods for check or credit payment--where recording and other perfection devices do not exist.  The test was assuredly not meant to override the specific 10-day requirement.

The judgment must be <u>vacated</u> and the case <u>remanded</u> for further proceedings.  The parties apparently disagree about the consequences of triggering section 547(b); but those issues have not been briefed to this court and must be litigated at the trial level in the first instance.[9]  Each side will bear its own costs on this appeal.

<u>It is so ordered</u>.

---

[9]Seemingly two issues remain to be litigated.  11 U.S.C. § 550(a) states that "to the extent that a transfer is avoided under section . . . 547 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  In the bankruptcy court, the trustee argued for the value of the mortgage to return to the estate and GAMC argued for the mortgage itself to become property of the estate.  The second issue is that of the debtor's non-debtor co-mortgagor and the effect her interest has on the avoidance of the transfer.