393 B.R. 821 (2008)
Richard A. REALE, Jr., Debtor.
Lynne F. Riley, Chapter 7 Trustee, Plaintiff-Appellee,
v.
National Lumber Company, Defendant-Appellant.
BAP No. MB 08-026. Bankruptcy No. 05-30258-JBR. Adversary No. 06-01244-JBR.
United States Bankruptcy Appellate Panel of the First Circuit.
August 14, 2008.
*823 Mark E. Barnett, Esq., on brief for Appellant.
Lynne F. Riley, Esq., and Maria C. Furlong, Esq., on brief for Appellee.
Before HAINES, VOTOLATO, and TESTER, United States Bankruptcy Appellate Panel Judges.
HAINES, Bankruptcy Judge.
The bankruptcy court entered a $20,000 preference recovery judgment against National Lumber Company ("National"). National appeals, principally asserting that the property it received from the chapter 7 debtor was not "an interest of the debtor in property" within the meaning of Bankruptcy Code § 547(b),[1] and, therefore, not a transfer avoidable by the trustee as a preference. We conclude that, because the debtor had, at minimum, an equitable interest in the property National received and that, because the property would have *824 been property of the chapter 7 estate had the transfer not occurred, the bankruptcy court correctly entered judgment for the trustee.
We also conclude that neither the earmarking doctrine nor the "contemporaneous exchange for new value" defense applies and that the bankruptcy judge, who took over the case from a resigning judge after trial, properly followed pertinent procedures in reviewing the record and reaching his decision. Thus, we affirm.

Background

1. The State Court Actions
Richard Reale, Jr., co-owned WSI Contracting, Inc., with Matthew Johnson. They, together with Sheryl Dumas, Johnson's wife, personally guaranteed WSI's trade account with National. When WSI defaulted in 2004, National commenced collection efforts, including placing a mechanic's lien against the property of a WSI customer and, later, bringing two state court actions against WSI, Reale, Johnson, and Dumas. In the first (the "Dedham Action"), seeking recovery of $11,691.87, it also sought to foreclose its lien on the WSI customer's property. In the second (the "Norfolk Action"), seeking recovery of $51,166.17, it obtained an attachment lien against Dumas's real estate.
The state court litigation settled, with Reale, Johnson and Dumas agreeing to pay National $50,000. Reale's initial contribution to the settlement was $20,000.[2]
On September 26, 2005, Reale tendered a $20,000 treasurer's check to National. Johnson and Dumas paid National their share of the settlement in December of that year. National released its mechanic's lien on September 30, 2005; voluntarily dismissed the Norfolk Action on November 30, 2005; and released its attachment against Dumas on December 5, 2005.

2. Bankruptcy Proceedings
Reale filed a voluntary chapter 7 petition on December 23, 2005. The trustee sued National to recover Reale's $20,000 payment as a preference.[3] The parties stipulated that all elements of a voidable § 547(b) preference existed, except the threshold requirement that National received a transfer of "an interest of the debtor in property." The trustee was put to her proof on that point.
The bankruptcy judge took the case under submission following trial, but resigned from the bench before a decision was issued. The matter was transferred to another bankruptcy judge. The second judge issued a Fed. R. Bankr.P. 9028 certification that he had reviewed the docket, pleadings, and trial transcript and that he had determined the matter could proceed to decision without prejudice to the parties. In the absence of objection, the judge entered judgment for the trustee. This appeal ensued.

Jurisdiction
A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it `ends the litigation on the *825 merits and leaves nothing for the court to do but execute the judgment.'" Id. at 646 (citations omitted). A preference recovery judgment is a final, appealable order. Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.), 231 B.R. 829, 830 (1st Cir. BAP 1999).

Standard of Review
We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.[4]See T.I. Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir.1995); Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 719-20 n. 8 (1st Cir.1994). A finding is clearly erroneous when, although there is evidence to support it, the Panel is left with the definite impression that a mistake has been made. In re Neponset River, 231 B.R. at 830-31.
As for that hybrid-the mixed question of law and fact, our review is but slightly more nuanced. The bankruptcy court's determination that Reale had an interest in the transferred property presents such a question. Advanced Testing Techs., Inc. v. Desmond (In re Computer Eng'g Assocs., Inc.), 337 F.3d 38, 45 (1st Cir.2003); In re Neponset River, 231 B.R. at 831. We review for clear error "unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved." Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 82 n. 2 (1st Cir.2008) (quoting In re Carp, 340 F.3d 15, 22 (1st Cir.2003)).
We review a successor judge's decision to decide a case after a trial conducted by another judge for abuse of discretion. See Fed. R. Bankr.P. 9028 (stating that if judge conducting trial is unable to proceed, any other judge may proceed upon satisfaction of certain requirements); Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 30 (1st Cir.1998) (explaining that judicial action taken in discretionary matters is reviewed for abuse of discretion); 11 Wright & Miller, Federal Practice & Procedure, Civ.2d § 2922 (2008) (explaining that replacement judge may proceed with matter if he feels he can do so on the record); 3 Moore, et al., Moore's Manual-Federal Practice and Procedure, § 23.37[4] (2008) (explaining that decision whether to hold new trial is left to discretion of successor judge); see also Canseco v. United States, 97 F.3d 1224, 1227 (9th Cir.1996) (concluding that successor judge must comply with Fed.R.Civ.P. 63 before deciding motion for new trial and explaining that successor judge would then have discretion to grant or deny motion). Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them. Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 43-44 (1st Cir.2007).

Discussion

1. The "Successor Judge" Issue:
National argues that the bankruptcy court abused its discretion in proceeding to decision on the record without recalling witnesses. The problem is particularly egregious here, National asserts, because the court expressly stated that it considered, inter alia, the "demeanor and credibility" of witnesses. We disagree.
*826 Federal Rule of Civil Procedure 63 ("Rule 63"), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9028, provides that:
If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.
Fed.R.Civ.P. 63.
The requirements are straightforward: the successor judge in a nonjury trial may proceed with a matter if he (1) certifies his familiarity with the case and his determination that the case may proceed without prejudice to the parties, and (2) recalls any witness whose testimony is material and disputed if so requested. See Fed. R. Bankr.P. 9028; Hoult v. Hoult, 57 F.3d 1, 8-9 (1st Cir.1995) (concluding that successor judge satisfied requirements of Rule 63 where he certified familiarity with record and neither party objected to his proceeding on record).
The successor judge fulfilled Bankruptcy Rule 9028's requirements. He issued the requisite certification. He had no duty to recall witnesses as neither party asked him to do so. National does not complain that it was given inadequate notice or insufficient time to react to the certification. Indeed, counsel conceded at oral argument that he considered he had a "good case on the documents" and made a "judgment call" to let the matter proceed without requesting that witnesses be recalled.[5]

2. The "Property of the Debtor" Issue:
As explained above, National stipulated to all elements of an avoidable preference except the fundamental requirement that the transfer in question was of property of the debtor. It contends that, because the funds with which Reale paid it were drawn from bank accounts titled in his mother's name "in trust for Richard A. Reale," and bearing the Social Security number of his father, Richard A. Reale, Sr., Reale had no interest in or control over those funds and, thus, their transfer involved no interest in his property.
Although the accounts were formally denominated as though they were held for Reale's father's benefit, abundant evidence, including Reale's testimony,[6] his mother's deposition testimony,[7] the circumstances *827 of the accounts' creation, and, ultimately, Reale's ability to withdraw the funds to pay National,[8] supports the bankruptcy court's conclusion that the funds were legally, or equitably, his. That is enough to sustain the judgment.
Section 547 allows a trustee to avoid preferential transfers to insure the orderly and fair distribution of the debtor's assets, and to prevent pre-petition dismantling of the debtor's estate. In re Neponset River, 231 B.R. at 832. A transfer is avoidable where the trustee proves that the debtor's interest in property was transferred to or for the benefit of a creditor, for or on account of an antecedent debt, while the debtor was insolvent on or within 90 days before the date of filing bankruptcy, and such transfer enables the creditor to receive more than it would in a chapter 7 liquidation. 11 U.S.C. § 547. A debtor has interest in property that would have been property of the estate had it not been transferred before the commencement of the bankruptcy proceeding. Begier v. I.R.S., 496 U.S. 53, 60, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); In re Neponset River, 231 B.R. at 832. Subject to certain exceptions that do not apply here, the estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).
The bankruptcy judge correctly interpreted the facts in light of applicable law and concluded that the $20,000 National received was Reale's money. To put it another way, had Reale not paid National the money, his bankruptcy trustee would have been entitled to the funds, notwithstanding the way in which the accounts were titled.

3. The "Earmarking" Issue:
Having determined that the funds were indeed Reale's, we have effectively rebuffed National's earmarking arguments. We will, however, explain briefly.
Where funds received by the debtor from another are "earmarked" to be paid a third party, courts have held that the funds are not property of the debtor's estate and thus the transfer to the third party is not a preference under § 547. Collins v. Greater Atl. Mortgage Corp. (In re Lazarus), 478 F.3d 12, 15 (1st Cir.2007); see also Kapela v. Newman, 649 F.2d 887, 892 (1st Cir.1981); Branch v. Hill, Holliday, Connors, Cosmopoulos, Inc. (In re Bank of New England Corp.), 165 B.R. 972, 977 (Bankr.D.Mass.1994). The classic example of earmarking is where a debtor receives funds from a guarantor for the purpose of paying off a creditor, and the debtor does so but then goes bankrupt shortly thereafter. In re Lazarus, 478 F.3d at 15. The funds are, therefore, transferred from the guarantor to the creditor through, rather than by, the debtor. Id. The doctrine has been applied where a non-guarantor funds a payment to a debtor's creditor via the debtor, thereby stepping into the first (paid) creditor's shoes. Id. In such instances, the debtor functions as a "mere conduit" and exercises no control over the funds' disposition. In re Neponset River Paper, 231 B.R. at 834; Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.), 440 F.3d 1296, 1300 (11th Cir.2006); 5 Collier on Bankruptcy ¶ 550.02[4] (15th Ed. Rev.2008).
*828 As the money paid by Reale to National was his own, the earmarking doctrine simply does not apply.

4. The "Contemporaneous Exchange" Issue:
National urges that the court erred in rejecting its contemporaneous exchange defense. It asserts that, in exchange for the $20,000 payment, it released its mechanic's lien (against WSI's customer's property), dismissed the Dedham Action and dismissed Reale as a defendant in the Norfolk Action. In its view, these events established a contemporaneous exchange for new value, insulating the transfer from preference attack.
Section 547(c)(1) sets forth the new value defense:
The trustee may not avoid under this section a transfer
to the extent that such transfer was
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange.
11 U.S.C. § 547(c)(1). "New value" means:
money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.
11 U.S.C. § 547(a)(2). The burden is on the creditor to prove that the new value exception applies. 11 U.S.C. § 547(g); In re Computer Eng'g, 337 F.3d at 44; Ralar Distribs., Inc. v. Rubbermaid, Inc. (In re Ralar Distribs., Inc.), 4 F.3d 62, 68 n. 5 (1st Cir.1993); 5 Collier on Bankruptcy ¶ 547.04 (15th Ed. Rev.2008).
"New value" is something of tangible economic value that "actually and in real terms enhance[s] the worth of the debtor's estate so as to offset the reduction in the estate that the transfer caused." Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.), 177 B.R. 120, 137-38 (Bankr.D.Mass.1994). The value given in a contemporaneous exchange must be the approximate worth of the asset transferred. Id. at 138. As such, the creditor must provide a specific dollar valuation of the "new value" that the debtor received in exchange. Id.
National's arguments fail. To begin, there is no evidence that National and Reale intended the purported exchange to be contemporaneous for new value, an essential element of the defense. See 11 U.S.C. § 547(c)(1)(A). Moreover, National presented no evidence of the value to Reale of what it released, a second fatal shortcoming. See id.; In re Aero-Fastener, Inc., 177 B.R. at 137-38. The bankruptcy court properly rejected the § 547(c)(1) defense.

5. The Avoidance of Statutory Lien Issue:
Finally, National argues that Reale's $20,000 payment was not a preference because it was made in part to dissolve a statutory lien that the trustee could not have avoided. We reject this argument, because the lien in question did not encumber Reale's property.
Section 547(c)(6) states that a trustee may not avoid a transfer that is the fixing of a statutory lien that is not avoidable under § 545. Section 545 specifies circumstances in which a trustee can avoid a statutory lien on property of the debtor. See In re Neponset River, 231 B.R. at 832. Assets that are not property of the estate *829 are irrelevant to the § 547(c)(6) inquiry. The mechanic's lien National released encumbered a third party's property, not Reale's. No more need be said.

Conclusion
For the foregoing reasons, the bankruptcy court's entry of judgment for the trustee is AFFIRMED.
NOTES
[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8.
[2] Reale agreed that, after consummating the settlement, he would owe Johnson and Dumas a total of $5,000.
[3] The trustee's complaint erroneously states the petition filing date was December 23, 2006. The parties' stipulation that the September 26, 2005, payment occurred within § 547(b)(4)(A)'s 90-day prepetition preference period eliminates any issue on this score.
[4] Where factual findings are based on determinations regarding the credibility of witnesses, we generally accord even greater deference to the trial court's findings. Fed. R. Bankr.P. 8013; Rodriguez-Morales v. Veterans Admin., 931 F.2d 980, 982 (1st Cir.1991). We decline to do so in this case, however, as the court did not have the opportunity to observe witness testimony first hand, but instead based its findings on review of the record.
[5] The judge did state that his analysis included consideration of the witnesses' demeanor and credibility. We concede that, although credibility can be assayed in this case by considering the witnesses' words and motives, observing their demeanor from the cold record would be impossible. We consider the judge's use of the term "demeanor" unfortunate in this case, but far from fatal to his findings. It was probably included inadvertently and harmlessly. As discussed below, the record is replete with evidence supporting the judgment.
[6] Reale (who had nothing to gain by the testimony) stated that he knew he had the funds on deposit. He was aware that the funds had been given him by his late grandmother, in two annual installments, before her death and that he had asked his parents to hold them for him so he could eventually use them to buy a house. National points to Reale's contradictory deposition testimony, but the judge, as fact finder, could reasonably have accepted Reale's trial testimony.
[7] Helen DiCarlo-Reale confirmed the source of the funds. She explained that Reale's brother had received identical gifts from her mother at the same time. She also testified, in so many words, that even if the accounts in which they were held were awkwardly titled, the money was her son'sall he had to do was ask for it and he could put it to any use.
[8] Although one bank employee testified that, under applicable bank policies, Reale could not access the funds without his mother's signature, a bank manager who knew the family well permitted Reale to withdraw the funds without that signature. Funds from the two accounts supplied the $20,000 paid to National. A small surplus was transferred to a personal checking account that Reale used to pay his bills.