Susan GILLIS, Debtor.

Branch R. Yules, Plaintiff–Appellee,

v.

Susan Gillis, Defendant–Appellant.

BAP No. MB 08–067.
Bankruptcy Case No. 05–23528–FJB.
Adversary No. 06–01007–FJB.

United States Bankruptcy Appellate Panel
of the First Circuit.

March 26, 2009.

Nicholas Katsonis, Esq., on brief for Defendant–Appellant.

Gregory D. Lorincz, Esq., and Edward K. Shanley, Esq., Attleboro, MA, on brief for Plaintiff–Appellee.

Before VOTOLATO, VAUGHN, and CARLO, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

The debtor, Susan Gillis, appeals an order of the bankruptcy court ("Order"): (1) revoking her discharge pursuant to §§ 727(d)(1) and (2); and (2) excepting the claim of Branch R. Yules from discharge pursuant to § 523(a)(6).[1] For the reasons discussed below, the Panel concludes that Bankruptcy Judge Joel B. Rosenthal, the successor judge, did not abuse his discre-

---

1. The Debtor commenced this chapter 13 case prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, Title III, § 302, 119 Stat. 23 (2005). Accordingly, unless expressly stated otherwise, all references to the "Bankruptcy Code" or to statutory sections herein are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101, *et seq.*

tion in proceeding to a decision on the record before him, nor did he commit error in revoking Gillis' discharge pursuant to §§ 727(d)(1) and (2). Therefore, the Order revoking discharge is **AFFIRMED.**[2]

## Background

### A. Pre–Petition Events

Prior to the commencement of this bankruptcy case, Gillis was the owner of a multi-unit residential property located in Rhode Island (the "Property"). In November 2003, Gillis and Yules entered into a real estate development project to improve and rent, or sell the Property. As part of the agreement, Yules would provide capital for the project, and Gillis' role was to supervise and manage the improvement, rental, and financial affairs of the operation of the venture. The project contemplated either: (1) that the Property be renovated and rented; (2) sold, with the parties to share the profit; or (3) Gillis exercising an option to refinance, and according to an agreed upon formula, buying out Yules' interest in the venture.

Although Yules and Gillis initially agreed to hold title to the Property through a nominee trust as co-owners, Yules abandoned that idea after consulting with Rhode Island counsel and learning that such a trust would not limit his personal liability. It is undisputed that Yules was considered an equitable co-owner of the Property, and that an appropriate title-holding agreement would be formally executed to reflect their co-ownership. This did not occur, however, and title remained (ominously) in Gillis' name alone.

In accordance with his obligations under the agreement, Yules transferred $135,000 to Gillis, who used $110,000 to pay off two mortgages on the Property, and $25,000 for renovations and other expenses related to the Property. Sometime thereafter, Gillis notified Yules that she was attempting to refinance the Property in order to exercise her option to buy him out. In July 2004, without Yules' knowledge, Mr. and Mrs. Gillis did refinance the Property, and they obtained and kept the entire proceeds of the loan ($224,000). History now tells us that Gillis failed to notify Yules of the refinancing, or to remit any of the loan proceeds to him. Instead, Gillis used most of the funds in question for personal, recreational, and other purposes[3] totally unrelated to the business venture.

### B. The Bankruptcy Proceedings

Gillis filed a chapter 13 petition on October 15, 2005, and two months later converted the case to chapter 7. In her schedules, Gillis listed, among other assets, her interest in the Property, an insurance claim for water damage to the Property, and a counterclaim in a civil action against Richard Santos and the Estate of Elizabeth Santos (the "Santos litigation").

As a chapter 7 debtor, Gillis failed to appear at six scheduled § 341 meetings, typically citing health and other related concerns, before she finally "attended" a March 31, 2006, § 341 meeting and then, only telephonically, from her lawyer's office. At the meeting, Gillis testified at

---

**2.** Because Gillis' § 523(a)(6) issue is subsumed by and disposed of in our § 727(d)(1) ruling, that issue need not be addressed or decided here.

**3.** Gillis has admitted that she used the mortgage loan proceeds to pay personal expenses such as rent, attorneys' fees, credit card bills, taxes, beauty treatments, and to buy personal

items, i.e., a car, a hot tub, Patriots football tickets, and a deposit on a 32 foot boat. There is nothing in the record before the Panel regarding what, if any equity remains in the Property, and at this point Gillis' conduct can be described as nothing more than a willful and intentional scam.

length describing how the $224,000 was spent, the status of the insurance claim for water damage at the Property, and the Santos litigation.

Yules asserts that Gillis made numerous misrepresentations, including: (1) she was unaware of the status of the insurance claim for water damage, when in fact she had already hired a public adjuster who was in the process of collecting insurance proceeds on her behalf; (2) none of the $224,000 was for personal use, although she has since retracted and admitted that she, in fact, spent *most* of the cash for personal use; and (3) she could not say where she deposited the mortgage proceeds, but that "it was likely that it went into her Citizens bank account." At the time, she did not even have an account at Citizens.

In January 2006, Yules filed a § 523(a)(2) complaint objecting to the discharge of his claim against Gillis. After amending the complaint to include counts under §§ 523(a)(4) and (6), Yules moved for summary judgment. That motion was denied, and on May 9, 2006, the bankruptcy court entered Gillis' Order of Discharge.

Discovery continued in the adversary proceeding, and in October 2006, Gillis was deposed and testified that she had received a $25,000 settlement in the Santos litigation. Thereafter, on November 22, 2006, at the request of the parties, the bankruptcy judge entered an agreed upon order (the "Agreed Order") directing Gillis to: (a) file amended schedules; (b) turn over to the chapter 7 trustee (the "Trustee") $25,000 "reflecting proceeds of civil litigation settlement" in the Santos litigation; and (c) to account for water damage insurance proceeds. Gillis failed to comply with any of the three directives. Also in No-

vember 2006, Yules filed a Motion to Amend/Supplement the First Amended Complaint to include a 11 U.S.C. § 727 revocation of discharge count. The bankruptcy judge allowed the amendment.

The trial on the merits of the adversary proceeding began on March 14, 2007, and at the conclusion of the plaintiff's case, Gillis moved for a directed verdict on all counts of the complaint. Treating the motion for directed verdict as one for judgment on partial findings,[4] the bankruptcy judge granted the motion as to counts under §§ 523(a)(2)(A), 523(a)(4) and 727(d)(3), and denied the motion as to the §§ 523(a)(6), 727(d)(1) and 727(d)(2) counts. The trial resumed on the remaining counts, and was concluded on August 22, 2007.

On February 23, 2008, after the sitting bankruptcy judge resigned from the bench, the matter was transferred to Judge Joel B. Rosenthal (the "successor judge"). At a status conference on March 18, 2008, Gillis' counsel, Yules' counsel, and the Trustee reported, collectively, that they were in agreement, and jointly requested that Judge Rosenthal render a decision on the trial and related matters previously heard by the original bankruptcy judge. On that same day, Judge Rosenthal issued a certification pursuant to Fed. R. Bankr.P. 9028 (the "Certification") that he had reviewed the docket, pleadings, and the transcripts of the evidentiary hearings and trial, and had determined that the matter could be completed without prejudice to the parties. None of the parties objected or otherwise responded to the Certification.

On August 27, 2008, Judge Rosenthal issued the Order excepting Yules' claim

---

4. A motion for directed verdict is appropriate only in a jury trial; when made in a bench trial, a motion for directed verdict is treated as a motion for judgment on partial findings under Fed.R.Civ.P. 52(c).

against Gillis from discharge under § 523(a)(6) and revoking Gillis' discharge under §§ 727(d)(1) and (2). This appeal followed.

### Jurisdiction

■■■■ Before addressing the merits of a dispute, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). Orders determining a debt to be nondischargeable, and orders revoking a debtor's discharge are final appealable orders. *See Fokkena v. Klages (In re Klages)*, 381 B.R. 550 (8th Cir. BAP 2008).

### Standard of Review

■■■■ The Panel generally reviews a bankruptcy court's findings of fact for clear error, and reviews conclusions of law *de novo*. *See T.I. Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). A finding is clearly erroneous when, although there

is evidence to support it, the Panel is left with the definite impression that a mistake has been made. *See Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 830–31 (1st Cir. BAP 1999). Where findings are based on the credibility of witnesses, even greater deference is accorded to the trial court's findings. *See* Fed. R. Bankr.P. 8013; *Rodriguez–Morales v. Veterans Admin.*, 931 F.2d 980, 982 (1st Cir.1991). The Panel did, however, decline to accord such deference in a case similar to this one, where the bankruptcy judge did not have the opportunity to observe witness testimony first hand, but instead based his findings on review of the record. *See Riley v. National Lumber Co. (In re Reale)*, 393 B.R. 821, 825 n. 4 (1st Cir. BAP 2008).

■■■■ The Panel reviews a successor judge's decision to decide a case, after a trial heard by another judge, for abuse of discretion. *See id.* at 825 (citing cases); *see also* Fed. R. Bankr.P. 9028 (if a judge conducting a trial is unable to proceed, another judge may proceed upon satisfaction of certain requirements). Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them. *See Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 43–44 (1st Cir.2007).

Because this appeal involves both credibility and successor judge issues, the Panel will address both standards.

### Discussion

### I. The "Successor Judge" Issue

Gillis argues that Judge Rosenthal committed error by certifying that he could proceed to a decision on the record without ordering a new trial or recalling witnesses,

on the ground that he "cited the Debtor's credibility as a foundation for its rulings, without having had the opportunity "to personally experience the demeanor of the witnesses as they testified."

 Federal Rule of Civil Procedure 63 ("Rule 63"), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9028, provides that:

> If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

Fed.R.Civ.P. 63. Therefore, the successor judge in a nonjury trial may proceed with a matter if he (1) certifies his familiarity with the case and his determination that the case may proceed without prejudice to the parties, and (2) recalls any witness whose testimony is material and disputed *if so requested. See id.;* Fed. R. Bankr.P. 9028; *Hoult v. Hoult,* 57 F.3d 1, 8–9 (1st Cir.1995) (concluding that the successor judge satisfied Rule 63 where he certified familiarity with the record, and neither party objected to his proceeding).

In *Reale,* which is procedurally identical to this case, the Panel recently determined that the successor judge fulfilled the requirements of Fed. R. Bankr.P. 9028 by issuing the requisite certification and then proceeding, in the absence of any objection. The *Reale* Panel concluded:

> The successor judge fulfilled Bankruptcy Rule 9028's requirements. He issued the requisite certification. He had no duty to recall witnesses as neither party asked him to do so. [The appellee] does not complain that it was given inadequate notice or insufficient time to react to the certification.

393 B.R. at 826.

 Similarly, Judge Rosenthal, as the duly appointed successor judge, fulfilled Fed. R. Bankr.P. 9028's requirements here. He issued the requisite certification that he had reviewed the docket, the pleadings, and transcripts and was familiar with the same, and determined that the adversary proceeding could be completed without prejudice to the parties. He did so after holding a status conference with Gillis' counsel, Yules' counsel, and the Trustee, where all three parties expressly requested that he render a decision on the evidence in the trial that had already occurred.[5] Gillis does not assert that she received inadequate notice, or that she had insufficient time to respond to the Certification. In these circumstances, it would be hard to imagine a clearer example of waiver. *See Townsend v. Gray Line Bus Co.,* 767 F.2d 11, 18 (1st Cir.1985) (holding that the right to a new trial was waived where the appellant failed to appear at the status conference, failed to respond when notified that the court would proceed on the basis of the old record, and neglected to respond or communicate with the court on the issue.)

---

**5.** At the status conference, Yules' counsel stated:

> I've had the opportunity over the last week, or our office has, to speak with the [Gillis'] counsel and the Trustee, and it appears that we are all in agreement, and on the same

page, that we'd like your Honor to render a decision based on the evidence and the trial that has already taken place.

The bankruptcy judge then asked: "Anybody have anything to add to that?" Gillis' attorney replied, "I don't, Your Honor."

Nevertheless, Gillis now has the temerity to argue that the successor judge should have granted a new trial, sua sponte, because without having observed her demeanor while testifying, he found that she lacked credibility. In effect, Gillis argues that the successor judge abused his discretion in proceeding to the decision without recalling witnesses or granting a new trial. We disagree because, in addition to the express waiver here, "credibility can be assayed ... by considering the witnesses' words and motives...." *Reale,* 393 B.R. at 826 n. 5; *see also Home Placement Serv., Inc. v. Providence Journal Co.,* 819 F.2d 1199, 1204 n. 6 (1st Cir.1987) (recognizing that prejudice may exist if the successor judge is required to determine credibility of witnesses whom he or she did not observe at the original trial, but concluding that successor judge may determine issues on the record that depend "not on witness credibility, but on the legal sufficiency of largely uncontradicted ... evidence....").

■ Here, the successor judge found that Gillis was not credible, based on "her acknowledged and undisputed conduct." He was also clearly authorized to infer that Gillis' contradictory statements throughout the record, her reluctance to appear for multiple scheduled § 341 meetings, and problematic representations about her absences, constituted a sufficient basis to find that she was not credible. Although the successor judge did not form his decision regarding Gillis' credibility while looking her straight in the eye, he based his rulings on all of the uncontradicted evidence, and this is not a departure from normal judicial practice or custom. *See* Fed.R.Civ.P. 63 and Fed. R. Bankr.P. 9028.

**II. Section 727(d)—Revocation of Discharge**

■ Section 727(d) provides:

On request of the trustee, a creditor or the United States Trustee, and after notice and a hearing, the Court shall revoke a discharge granted under subsection (a) of this section if-

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee.

11 U.S.C. § 727(d)(1) & (2). In essence, §§ 727(d)(1) and (d)(2) allow revocation of a discharge when it is shown that the debtor engaged in fraud in connection with his or her bankruptcy case, and because revoking a discharge is an extraordinary remedy, § 727(d) should be construed liberally in favor of the debtor and strictly against those objecting to discharge. *See Notinger v. Weisberg (In re Weisberg),* 202 B.R. 332, 334 (Bankr.D.N.H.1996).

**A. Section 727(d)(1)**

■ Section 727(d)(1) allows a court to revoke discharge if the following elements have been satisfied: (1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in denial of discharge under § 727(a). *See* 11 U.S.C. § 727(d)(1). The party seeking revocation bears the burden of proving each of these elements by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 289, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The plaintiff must also show that the debtor

obtained a discharge by committing "actual fraud" or "fraud in fact," such as the intentional failure to schedule an asset of the estate. 6 *Collier on Bankruptcy* ¶ 727.15[2] (15th ed. rev.2000).

■ Gillis argues, also incorrectly and without explanation or analysis, that the successor judge erred in concluding that she committed fraud, for § 727(d)(1) purposes, by making false statements under oath at the § 341 meeting of creditors. The evidence clearly supports the finding that Gillis intentionally made false statements at the § 341 meeting, by testifying that she was unsure of the status of the insurance claim for water damage at the Property, while she had already retained her own public adjuster and was in the process of collecting insurance funds.[6] Also, it was not unreasonable for the successor judge to construe Gillis' statements as intentionally false, and designed to mislead and hinder the Trustee from investigating the claim further. "Allegations of lying ... [at a § 341 meeting] satisfy the requirement of alleging a post-petition fraud." *Richardson v. McCullough (In re McCullough)*, 259 B.R. 509, 522 (Bankr. D.R.I.2001). Therefore, the first element has been met, and the successor judge's finding that Gillis committed fraud by testifying knowingly and untruthfully at the § 341 meeting was not an abuse of discretion. In addition, the second element has been met as there is no evidence that Yules knew about Gillis' misrepresentations at the § 341 meeting prior to entry of the order of discharge.

As to the third element, we conclude that the fraud, if known, would have re-sulted in the denial of Gillis' discharge under § 727(a). Pursuant to § 727(a)(4), discharge will be denied if "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4). To prevail under this section, the objecting party must prove that: (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact in connection to the bankruptcy case. *See Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 67 (1st Cir.2004) (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987)). Here, Gillis made false statements under oath at the § 341 meeting regarding the status of the insurance claim, and it was not unreasonable for the successor judge to conclude that Gillis knew that her statements were false, nor was it unreasonable for the successor judge to conclude that Gillis' false statements were intended to mislead and hinder the Trustee from investigating the claim further. Although there is a legal issue as to whether the insurance proceeds constituted property of the bankruptcy estate, Gillis' failure to accurately describe the nature and status of the claim, as well as her failure to disclose receipt of the proceeds, was material to the Trustee's investigation of the claim.

The Panel concludes that, in revoking Gillis' discharge, the successor judge correctly concluded that all of the elements of § 727(d)(1) were met, and that his findings of fact were not clearly erroneous.

### B. Section 727(d)(2)

■ Section 727(d)(2) provides that a chapter 7 debtor's discharge may be re-

---

**6.** The Trustee asked Gillis: "All right. Now what about the insurance claim? You said that you didn't have insurance. The mortgage company made some type of a claim. What is your understanding of the status of that claim?" Gillis answered: "I'm not sure. I'm not sure where it is, but it's something that's probably going to go through an appraisal process or perhaps even—I really don't know where it's going to end up." It is quite a stretch to argue that the successor judge committed error in finding that Gillis' testimony at the § 341 meeting was untrue.

**146**

voked if the following elements are met: (1) the debtor acquired property of the estate; and (2) the debtor knowingly and fraudulently failed to report or deliver the property to the trustee. *See* 11 U.S.C. § 727(d)(2); *see also McCullough,* 259 B.R. at 522.

■ It is undisputed that during the course of her bankruptcy case, Gillis received $25,000 from the settlement of the Santos litigation, that the funds received were property of the estate, and that she failed to inform the Trustee of the existence and receipt of the funds.

Although Gillis asserts she did not know that she was required to notify the Trustee of the receipt of such funds, common sense, and the totality of the circumstances, belie her claim of innocence. Gillis listed both items on her bankruptcy schedules, she fended off many questions about them at the § 341 meeting and falsely responded to similar inquiries at her deposition. To charge Gillis with knowledge of her misconduct was an entirely reasonable conclusion. Moreover, the successor judge expressly ordered Gillis to turn over the $25,000 Santos settlement proceeds to the Trustee and, without explanation, she failed to do so. Under all of the circumstances, the successor judge did not abuse his discretion in finding that Gillis' failure to inform the Trustee of the receipt of such property, and her failure to turn over the funds to the Trustee after being ordered to do so, was knowing and fraudulent, and there was no error in revoking Gillis' discharge pursuant to § 727(d)(2).

### III. Section 523(a)(6)—Willful and Malicious Injury

Gillis argues that the successor judge erred in (1) concluding that her failure to remit to Yules his investment and profits was willful and malicious, and (2) excepting

Yules' claim from discharge under § 523(a)(6). As we are upholding the successor judge's decision to revoke Gillis' discharge pursuant to § 727(d), we need not consider the § 523(a)(6) nondischargeability issue. *See Hatton v. Spencer (In re Hatton),* 204 B.R. 477, 481 (E.D.Va.1997) ("[A] decision that the bankruptcy court acted appropriately pursuant to § 727 ... clearly obviates the need to conduct an inquiry to determine whether one of the ... individual debts is nondischargeable under § 523"); *see also Burrell v. Sears (In re Sears),* 225 B.R. 270, 271 (Bankr. D.R.I.1998).

### *Conclusion*

For the reasons discussed above, the Panel concludes that the successor judge did not abuse his discretion in certifying that he could proceed to a decision on the record, nor did he commit any legal error in revoking Gillis' discharge pursuant to §§ 727(d)(1) and (2). The Order appealed from is therefore **AFFIRMED.**